**FILED**

**JANUARY 25, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**UNITES STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

FH Partners Investments, LLC, a Texas )
limited liability company, )
                             )
          Plaintiff, )
   v. )      Case No.
                             )
Quality Foods I, LLC, an Illinois limited )
liability company, Quality Foods II, LLC, an )
Illinois limited liability company, Benjamin )
Laster, and Charlie Watts, )
                             )
         Defendants. )

**08 C 578**

**JUDGE CASTILLO**
**MAGISTRATE JUDGE KEYS**

<u>**VERIFIED COMPLAINT**</u>

Plaintiff FH Partners Investments, LLC, a Texas limited liability company, by and through its attorneys, McKenna Storer, files this Complaint against Quality Foods I, LLC, Quality Foods II, LLC, Benjamin Laster, and Charlie Watts, Defendants. In support of this Complaint, Plaintiff states as follows:

<u>**JURISDICTION AND GENERAL ALLEGATIONS**</u>

    **A.**    *Federal Question Jurisdiction.*

1.    The action arises under 28 U.S.C. sec. 1346(f) which provides that the district courts have exclusive original jurisdiction of civil actions under 28 U.S.C. sec. 2409(a) to quiet title to an estate or interest in real property in which an interest is claimed by the United States. The United States of America, through the Internal Revenue Service and Department of Treasury claim an interest in the Property foreclosed in this Complaint.

    **B.**    *Diversity of Jurisdiction.*

2.    Plaintiff is a limited liability company formed under the laws of Texas and

1

having its principal place of business in the state of Texas; Defendants are citizens of states other than Texas. The amount in controversy, exclusive of interest and costs, exceeds the sum specified by 28 U.S.C. sec. 1332(a)(1).

3.    Plaintiff FH Partners Investments, LLC ("Plaintiff" or "Bank") is a limited liability company formed under the laws of Texas and having its principal place of business in the state of Texas.

4.    Defendant Quality Foods I, LLC, ("Quality I") is an Illinois limited liability company with its principal place of business at 2562 Western Ave., Park Forest, IL 60466.

5.    Defendant Quality Foods II, LLC, ("Quality II") is an Illinois limited liability company with its principal place of business at 5441 S. Wentworth Ave., Chicago, IL 60609.

6.    Defendant Benjamin Laster is an individual guarantor of the Quality I and Quality II indebtedness to Plaintiff, who resides in the state of Washington, DC..

7.    Defendant Charlie Watts is an individual guarantor of the Quality I and Quality II indebtedness to Plaintiff, who resides in the state of Illinois.

## COUNT I -.
## QUALITY FOODS I, LLC BREACH OF PROMISSORY NOTE

As and for Count I of its Complaint, FH Partners Investments, LLC complains against Quality Foods I as follows:

8.    Plaintiff re-alleges and re-states paragraphs 1- 7 of the Complaint as this paragraph 8 of Count II.

9.    In or about October, 2004 and thereafter Quality Foods I applied for and

2

obtained loans and subsequent extensions of credit from Pinnacle Bank.[1]

10.    On or about November 1, 2004 Quality I made, executed and delivered to Bank its promissory note ("Note I") for a loan in the principal sum of one hundred seventeen thousand one hundred fifty-five and 54/100 dollars ($117,155.54.) A copy of Note I is attached hereto and incorporated by reference as Exhibit A.

11.    FH Partners Investments, LLC is the owner and holder of Note I.

12.    Under the terms of Note I, Quality I promised to pay Bank the sum of one hundred seventeen thousand one hundred fifty-five and 54/100 dollars ($117,155.54.)

13.    Quality I has failed to pay the amounts due Bank as required under the terms of Note I.

14.    On February 15, 2006 Quality I and Bank entered into a Forbearance Agreement (See Exhibit B) which expired on August 15, 2006. Quality I is also in default under the terms of that Agreement, and the Bank's duty to forbear has expired.

15.    FH Partners Investments, LLC has made demand upon Quality I for payment of all amounts due it from Quality I. See Exhibit C.

16.    Quality I has failed to pay Bank the amounts so due.

17.    As of January 17, 2008 there was due FH Partners Investments, LLC from Quality I the sum of $107,241.25 as and for principal, and interest as it continues to accrue through the date of judgment.

18.    Pursuant to Exhibits A and B, Quality I agreed to pay FH Partners Investments, LLC any and all expenses, including attorneys' fees and costs paid or

---

[1] Plaintiff is the successor to Fifth Third bank who was the successor to Pinnacle Bank.

incurred by the Bank in enforcing the rights of the Bank under the provisions of said Exhibits.

19.     FH Partners Investments, LLC has incurred such expenses, including attorneys' fees and costs, in connection with the collection of this loan, these proceedings and the liquidation of this collateral security.

20.     Therefore, FH Partners Investments, LLC has been damaged by Quality I in the sum of $107,291.25 plus interest through the date of judgment, all attorneys fees, costs of collection and costs of liquidation of collateral, less credit for any sums collected through the liquidation of the collateral.

**WHEREFORE**, FH Partners Investments, LLC requests the following relief:

    a.    This Court enter Judgment in favor of FH Partners Investments, LLC and against Quality Foods I, LLC in the sum of $ 107,291.25 plus interest through the date of judgment, and all attorney's fees and costs;

    b.    This Court grant FH Partners Investments, LLC such other relief as it deems equitable and just under the circumstances.

**COUNT II**
**QUALITY FOODS II, LLC BREACH OF PROMISSORY NOTE**

As and for Count I of its Complaint, FH Partners Investments, LLC complains against Quality Foods II as follows:

21.     Plaintiff re-alleges and re-states paragraphs 1- 7 of the Complaint as this paragraph 21 of Count II.

22.     In or about October, 2004 and thereafter Quality Foods I applied for and

4

obtained loans and subsequent extensions of credit from Pinnacle Bank.[2]

23.     On or about November 9, 2004 Quality I made, executed and delivered to Bank its promissory note ("Note II") for a loan in the principal sum of three hundred seventy thousand three hundred fifty three and 69/100 dollars ($370,353.69.) A copy of Note II is attached hereto and incorporated by reference as Exhibit D.

24.     FH Partners Investments, LLC is the owner and holder of Note II.

25.     Under the terms of Note II, Quality II promised to pay Bank the sum of three hundred seventy thousand three hundred fifty three and 69/100 dollars ($370,353.69.)

26.     Quality II has failed to pay the amounts due Bank as required under the terms of Note II.

27.     On August 12, 2005 Quality II and Bank entered into a Forbearance Agreement (See Exhibit B) which expired on February 15, 2006. Quality II is also in default under the terms of that Agreement, and the Bank's duty to forbear has expired.

28.     FH Partners Investments, LLC has made demand upon Quality II for payment of all amounts due it from Quality II. See Exhibit E.

29.     Quality II has failed to pay Bank the amounts so due.

30.     As of January 17, 2008 there was due FH Partners Investments, LLC from Quality II the sum of $359,211.03 as and for principal, and interest as it continues to accrue through the date of judgment.

31.     Pursuant to Exhibits D and E, Quality II agreed to pay FH Partners Investments, LLC any and all expenses, including attorneys' fees and costs paid or

---

[2] Plaintiff is the successor to Fifth Third bank who was the successor to Pinnacle Bank.

incurred by the Bank in enforcing the rights of the Bank under the provisions of said Exhibits.

32.    FH Partners Investments, LLC has incurred such expenses, including attorneys' fees and costs, in connection with the collection of this loan, these proceedings and the liquidation of this collateral security.

33.    Therefore, FH Partners Investments, LLC has been damaged by Quality II in the sum of $359,261.03, plus interest through the date of judgment, all attorneys fees, costs of collection and costs of liquidation of collateral, less credit for any sums collected through the liquidation of the collateral.

**WHEREFORE**, FH Partners Investments, LLC requests the following relief:

a.    This Court enter Judgment in favor of FH Partners Investments, LLC and against Quality Foods II, LLC in the sum of $359,261.03, plus interest through the date of judgment, and all attorney's fees and costs;

b.    This Court grant FH Partners Investments, LLC such other relief as it deems equitable and just under the circumstances.

### COUNT III
### UCC FORECLOSURE
### QUALITY FOODS I, LLC

As and for Count III of its Complaint, Bank complains against Quality I as follows:

34.    Plaintiff re-alleges and re-states paragraphs 1- 7 of this Complaint as this paragraph 34 of Count III.

35.    On or about July 21, 1999, Quality I made, executed and delivered its

6

Commercial Security Agreement for all accounts, notes, contract rights, chattel paper, instruments, documents, conditional sales contracts, goods, inventory, equipment, machinery, furniture, fixtures, vehicles, general intangibles, insurance policies, acceptances and all proceeds of the collateral to secure its indebtedness to Bank and to secure all indebtedness and obligations then and thereafter owing Plaintiff. A copy of the Commercial Security Agreement is attached hereto and herein incorporated by reference as Exhibit F.

36.     In the Note dated November 1, 2004 referenced above and attached as Exhibit A, Quality I referenced and ratified the grant of the previous security interest.

37.     Bank owns and holds a perfected security interest in the Collateral recited in Exhibit F by reason of its duly recorded UCC Financing Statements, recorded December 29, 1999 as Document No. 004136900 and continued on September 1, 2004 as Document No. 8722332, and assigned on to Plaintiff on July 28, 2006 as Document No. 8827120 (Group Exhibit G.) As a result, Bank has been assigned all right, title and interest in the collateral.

38.     Based on information and belief and a review of UCC filings, there are no secured creditors with priorities superior to Plaintiff to the collateral.

39.     Bank does not have an inventory of Quality I's accounts receivable, equipment or other collateral. Plaintiff is informed and believes that Defendant Quality I is continuing to operate its business.

40.     Bank is entitled to notify Quality I's account debtors to make direct payments to the Bank pursuant to Exhibit F.

41.    Plaintiff is entitled to foreclose its interest in the collateral set forth in Exhibit F by taking possession of such collateral, selling or liquidating it.

WHEREFORE, Plaintiff prays that the Court:

A.    Enter an order of foreclosure allowing Plaintiff to take immediate possession of its collateral, to sell or liquidate such collateral, and to report to the Court for further entry of a deficiency judgment;

B.    For costs and attorneys fees for this action; and

C.    For such further relief as is equitable and just.

## COUNT IV
## UCC FORECLOSURE
## QUALITY FOODS II, LLC

As and for Count IV of its Complaint, Bank complains against Quality II as follows:

42.    Plaintiff re-alleges and re-states paragraphs 1- 7 of this Complaint as this paragraph 42 of Count IV.

43.    On or about August 1, 2004, Quality II made, executed and delivered its Security Agreement for all accounts, inventory, equipment, general intangibles, and all Investment Property; and all instruments, chattel paper, electronic chattel paper, documents, securities, moneys, cash, letters of credit, letter of credit rights, promissory notes, warrants, dividends, distributions, contracts, agreements, contract rights or other property, and all proceeds of the collateral to secure its indebtedness to Bank and to secure all indebtedness and obligations then and thereafter owing Plaintiff. A copy of the Security Agreement is attached hereto and herein incorporated by reference as Exhibit H.

44.    Bank owns and holds a perfected security interest in the Collateral recited in

8

Exhibit H by reason of its duly recorded UCC Financing Statements, recorded October 14, 1999 as Document No. 4108552 and continued on July 27, 2004 as Document No. 8717667 and assigned on to Plaintiff on July 28, 2006 as Document No. 8827121 (Group Exhibit I;) and the duly recorded UCC Financing Statements, recorded October 15, 1999 as Document No. 99972222 and continued on July 30, 2004 as Document No. 042122053 and assigned on to Plaintiff on September 19, 2008 as Document No. 0626217047 (Group Exhibit J.) As a result, Bank has been assigned all right, title and interest in the collateral.

45.    Based on information and belief and a review of UCC filings, there are no secured creditors with priorities superior to Plaintiff to the collateral.

46.    Bank does not have an inventory of Quality II's accounts receivable, equipment or other collateral. Plaintiff is informed and believes that Defendant Quality I is continuing to operate its business.

47.    Bank is entitled to notify Quality II's account debtors to make direct payments to the Bank pursuant to Exhibit H.

48.    Plaintiff is entitled to foreclose its interest in the collateral set forth in Exhibit H by taking possession of such collateral, selling or liquidating it.

WHEREFORE, Plaintiff prays that the Court:

A.    Enter an order of foreclosure allowing Plaintiff to take immediate possession of its collateral, to sell or liquidate such collateral, and to report to the Court for further entry of a deficiency judgment;

B.    For costs and attorneys fees for this action; and

C.    For such further relief as is equitable and just.

## COUNT V
## BREACH OF GUARANTY CONTRACT
## BENJAMIN LASTER

As and for Count V of its Complaint, FH Partners Investments, LLC complains against Benjamin Laster ("Laster") as follows:

61.   Plaintiff realleges and incorporates Paragraphs 1 through 7 of this Complaint as paragraph 61 of Count V.

62.   On November 9, 2004, Laster made, executed and delivered his Unconditional Guaranty of the obligations of Quality I and Quality II to Bank. A copy of the Unconditional Guaranty is attached hereto and herein incorporated by reference as Exhibit I.

63.   Quality I and Quality II have failed to make payments when due to Bank and are in default of their obligations to Bank.

64.   Demand has been made upon benjamin Laster to pay the indebtedness due FH Partners Investments, LLC from Quality I and Quality II pursuant to Exhibit G.

65.   Laster has failed to pay Bank any amounts so due.

66.   Pursuant to the terms of Exhibit G, Laster agreed to pay all attorneys' fees and costs incurred by Bank in connection with the enforcement of his Guaranty.

67.   As a result of Laster's failure to pay Bank, the Plaintiff has incurred additional attorneys' fees and costs of collection.

68.   There is now due Plaintiff from Quality I that sum not less than $105,784.20, plus interest through the date of judgment, attorney's fees and costs less credit for any proceeds received through the foreclosure and sale of collateral.

69.   There is now due Plaintiff from Quality II that sum not less than $353,931.61,

plus interest through the date of judgment, attorney's fees and costs less credit for any proceeds received through the foreclosure and sale of collateral

70.    Therefore, FH Partners Investments, LLC has been damaged by Laster in the sum of $459,715.81, plus interest through the date of judgment, attorney's fees and costs, less credit for any proceeds derived through the sale of collateral.

**WHEREFORE**, FH Partners Investments, LLC requests the following relief:

a.    This Court enter judgment in favor of FH Partners Investments, LLC and against Benjamin Laster in the sum of $ 459,715.81, plus interest through the date of judgment, attorney's fees and costs; and,

b.    This Court grant Plaintiff such other relief as it deems equitable and just.

## COUNT VI
## BREACH OF GUARANTY CONTRACT
## CHARLIE WATTS

As and for Count VI of its Complaint, FH Partners Investments, LLC complains against Charlie Watts ("Watts") as follows:

71.    Plaintiff realleges and incorporates Paragraphs 1 through 7 of this Complaint as paragraph 71 of Count VI.

72.    On November 9, 2004, Watts made, executed and delivered his Unconditional Guaranty of the obligations of Quality I and Quality II to Bank. A copy of the Unconditional Guaranty is attached hereto and herein incorporated by reference as Exhibit J.

73.    Quality I and Quality II have failed to make payments when due to Bank and are in default of their obligations to Bank.

11

74.    Demand has been made upon benjamin Watts to pay the indebtedness due FH Partners Investments, LLC from Quality I and Quality II pursuant to Exhibit I.

75.    Watts has failed to pay Bank any amounts so due.

76.    Pursuant to the terms of Exhibit G, Watts agreed to pay all attorneys' fees and costs incurred by Bank in connection with the enforcement of his Guaranty.

77.    As a result of Watts' failure to pay Bank, the Plaintiff has incurred additional attorneys' fees and costs of collection.

78.    There is now due Plaintiff from Quality I that sum not less than $105,784.20, plus interest through the date of judgment, attorney's fees and costs less credit for any proceeds received through the foreclosure and sale of collateral.

79.    There is now due Plaintiff from Quality II that sum not less than $353,931.61, plus interest through the date of judgment, attorney's fees and costs less credit for any proceeds received through the foreclosure and sale of collateral

80.    Therefore, FH Partners Investments, LLC has been damaged by Watts in the sum of $459,715.81, plus interest through the date of judgment, attorney's fees and costs, less credit for any proceeds derived through the sale of collateral.

**WHEREFORE**, FH Partners Investments, LLC requests the following relief:

a.    This Court enter judgment in favor of FH Partners Investments, LLC and against Charlie Watts in the sum of $ 459,715.81, plus interest through the date of judgment, attorney's fees and costs; and,

b.    This Court grant Plaintiff such other relief as it deems equitable and just.

FH Partners Investments, LLC

By:      /s/ Sara E.  Cook

One of its Attorneys


Sara E. Cook
ARDC 03126995
McKenna Storer
666 Russel Court, Suite 303
Woodstock, IL 60098
Phone: 815-334-9692
Fax: 815-334-9697
Email: scook@mckenna-law.com

023 - FTCH

 **Fifth Third Bank**

**Term Note**

OFFICER No. 09559
$117,155.54

NOTE No. 0900772906-00018

2562 WESTERN AV.    November 1, 2004
PARK FOREST, IL                (Effective Date)
60466

1.    PROMISE TO PAY. On or before February 28, 2005 (the "Maturity Date"), the undersigned, Quality Foods I, LLC, an Illinois limited liability company located at 15345 South Wood Street, Harvey, Cook County, Illinois 60426 ("Borrower") for value received, hereby promises to pay to the order of Fifth Third Bank (Chicago), a Michigan banking corporation located at 1701 W. Golf Road, Rolling Meadows, Cook County, Illinois 60008 for itself and as agent for any affiliate of Fifth Third Bancorp (together with its successors and assigns, the "Lender") the sum of One Hundred Seventeen Thousand One Hundred Fifty Five and 54/100 Dollars ($117,155.54) (the "Borrowing"), plus interest as provided herein, less such amounts as shall have been repaid in accordance with this Note. The outstanding balance of this Note shall appear on a supplemental bank record and is not necessarily the face amount of this Note, which record shall evidence the balance due pursuant to this Note at any time. As used herein, "Local Time" means the time at the office of Lender specified in this Note.

Principal and interest payments shall be made at Lender's address above unless otherwise designated by Lender in writing. Each payment hereunder shall be applied first to advanced costs, charges and fees, then to accrued interest, and then to principal.

This Note is subject to the terms and conditions of the Credit Agreement dated as of August 1, 2004 between Borrower and Lender, as the same has been or may be amended from time to time (the "Loan Agreement"). Capitalized terms herein which are not otherwise defined in this Note shall have the meaning set forth for them in the Loan Agreement.

The outstanding balance of this Note shall be due and payable in 2 installments of principal and interest, each in the amount of $2,452.69 on the 1st day of each calendar month beginning on December 1, 2004; provided that the entire principal balance, together with all accrued and unpaid interest and any other charges, advances and fees, if any, outstanding hereunder shall be due and payable in full on the earlier of the Maturity Date or upon acceleration of the Note.

The principal sum outstanding shall bear interest at a fixed rate per annum equal to 8.1% (the "Interest Rate"). Interest shall be calculated based on a 360-day year and charged for the actual number of days elapsed, and shall be payable on the 1st day of each month beginning on December 1, 2004.

Notwithstanding any provision to the contrary in this Note, in no event shall the interest rate charged on the Borrowing exceed the maximum rate of interest permitted under applicable state and/or federal usury law. Any payment of interest that would be deemed unlawful under applicable law for any reason shall be deemed received on account of, and will automatically be applied to reduce, the principal sum outstanding and any other sums (other than interest) due and payable to Lender under this Note, and the provisions hereof shall be deemed amended to provide for the highest rate of interest permitted under applicable law.

2.    SECURITY AGREEMENT. To secure repayment of this Note and all other Obligations (as defined below) together with all modifications, extensions and renewals thereof, Borrower hereby grants Lender a continuing security interest in all right, title and interest of Borrower in and to the following property, whether now owned or hereafter acquired (collectively, the "Collateral"): (i) any and all property in which Lender and/or any affiliate of Fifth Third Bancorp (including without limitation Fifth Third Securities, Inc.) is at any time granted a lien for any Obligation including, without limitation, all collateral specified in any of the documents executed in connection with this Note, (ii) all property in possession of Lender and/or any affiliate of Fifth Third Bancorp (including without limitation Fifth Third Securities, Inc.) including, without limitation, money, securities, instruments, documents, letters of credit, chattel paper, or other property delivered to Lender in transit, for safekeeping, or for collection or exchange for other property, (iii) all rights to payment from, and claims against, Lender and/or any affiliate of Fifth Third Bancorp (including without limitation Fifth Third Securities, Inc.), and (iv) any and all additions, substitutions, dividends, distributions (in the form of cash, property, stock or

EXHIBIT A

other securities) and other rights related or in addition to the foregoing, and any and all proceeds therefrom (the "Distributions"). Borrower agrees to immediately deliver to Lender all documents, certificates and instruments evidencing the Distributions and any additional documentation requested by Lender to perfect and protect Lender's security interest therein, and until such delivery Borrower shall hold the same in trust for Lender.

Borrower also grants Lender a security interest in all of the Collateral as agent for all affiliates of Fifth Third Bancorp for all Obligations of Borrower to such affiliates. Said security interest shall not be enforced to the extent prohibited by the Truth in Lending Act as implemented by Federal Reserve Regulation Z.

    3.    <u>USE OF PROCEEDS.</u> Borrower certifies that the proceeds of this loan are to be used for business purposes.

    4.    <u>RENEWAL.</u> This Note is issued, not as a payment toward, but as a continuation of, the obligations of Borrower to Lender pursuant to that certain note dated August 1, 2004, in the principal amount of $121,190.48 (together with all prior amendments thereto or restatements thereof the "Prior Note"). Accordingly, this Note shall not be construed as a novation or extinguishment of, the obligations arising under the Prior Note, and its issuance shall not affect the priority of any security interest granted in connection with the Prior Note.

    5.    <u>NOTE PROCESSING FEE.</u> Lender may charge, and Borrower agrees to pay on the above Effective Date, a note processing fee in the amount of $600.00.

    6.    <u>REPRESENTATIONS AND WARRANTIES.</u> Borrower hereby warrants and represents to Lender the following:

    (a)    <u>Organization and Qualification.</u> Borrower is duly organized, validly existing and in good standing under the laws of the State of its organization, has the power and authority to carry on its business and to enter into and perform all documents relating to this loan transaction, and is qualified and licensed to do business in each jurisdiction in which such qualification or licensing is required. All information provided to Lender with respect to Borrower and its operations is true and correct.

    (b)    <u>Due Authorization.</u> The execution, delivery and performance by Borrower of the Loan Documents have been duly authorized by all necessary company action, and shall not contravene any law or any governmental rule or order binding on Borrower, or the articles of organization and operating agreement of Borrower, nor violate any agreement or instrument by which Borrower is bound nor result in the creation of a Lien on any assets of Borrower except the Lien granted to Lender herein. Borrower has duly executed and delivered to Lender the Loan Documents and they are valid and binding obligations of Borrower enforceable according to their respective terms, except as limited by equitable principles and by bankruptcy, insolvency or similar laws affecting the rights of creditors generally. No notice to, or consent by, any governmental body is needed in connection with this transaction.

    (c)    <u>Litigation.</u> There are no suits or proceedings pending or threatened against or affecting Borrower, and no proceedings before any governmental body are pending or threatened against Borrower.

    (d)    <u>Business.</u> Borrower is not a party to or subject to any agreement or restriction that may have a material adverse effect on Borrower's business, properties or prospects. Borrower has all franchises, authorizations, patents, trademarks, copyrights and other rights necessary to advantageously conduct its business. They are all in full force and effect and are not in known conflict with the rights of others.

    (e)    <u>Licenses, etc.</u> Borrower has obtained any and all licenses, permits, franchises, governmental authorizations, patents, trademarks, copyrights or other rights necessary for the ownership of its properties and the advantageous conduct of its business. Borrower possesses adequate licenses, patents, patent applications, copyrights, trademarks, trademark applications, and trade names to continue to conduct its business as heretofore conducted by it, without any conflict with the rights of any other person or entity. All of the foregoing are in full force and effect and none of the foregoing are in known conflict with the rights of others.

PROMISSORY-NOTE © Fifth Third Bancorp 2001

34372-18-3-T.BORM

(f)   Laws and Taxes.  Borrower is in material compliance with all laws, regulations, rulings, orders, injunctions, decrees, conditions or other requirements applicable to or imposed upon Borrower by any law or by any governmental authority, court or agency.  Borrower has filed all required tax returns and reports that are now required to be filed by it in connection with any federal, state and local tax, duty or charge levied, assessed or imposed upon Borrower or its assets, including unemployment, social security, and real estate taxes.  Borrower has paid all taxes which are now due and payable.  No taxing authority has asserted or assessed any additional tax liabilities against Borrower which are outstanding on this date, and Borrower has not filed for any extension of time for the payment of any tax or the filing of any tax return or report.

(g)   Title.  Borrower has good and marketable title to the assets reflected on the most recent balance sheet submitted to Lender, free and clear from all liens and encumbrances of any kind, except for (collectively, the "Permitted Liens") (a) current taxes and assessments not yet due and payable, (b) liens and encumbrances, if any, reflected or noted on such balance sheet or notes thereto, (c) assets disposed of in the ordinary course of business, and (d) any security interests, pledges, assignments or mortgages granted to Lender to secure the repayment or performance of the Obligations.

(h)   Subsidiaries and Partnerships.  Borrower has no subsidiaries and is not a party to any partnership agreement or joint venture agreement.

7.   AFFIRMATIVE COVENANTS.  Borrower covenants with, and represents and warrants to, Lender that, from and after the execution date of the Loan Documents until the Obligations are paid and satisfied in full:

(a)   Financial Statements.  Borrower shall maintain a standard and modern system for accounting and shall furnish to Lender:

(i)   Within 90 days after the end of each fiscal year, a copy of Borrower's internally prepared consolidated financial statements for that year in a form reasonably acceptable to Lender, prepared and certified as complete and correct by the principal financial officer of Borrower;

(ii)   With the statements submitted above, a certificate signed by the principal financial officer of Borrower, (i) stating he is familiar with all documents relating to Lender and that no Event of Default specified in this Agreement, nor any event which upon notice or lapse of time, or both would constitute such an Event of Default, has occurred, or if any such condition or event existed or exists, specifying it and describing what action Borrower has taken or proposes to take with respect thereto, and (ii) setting forth, in summary form, figures showing the financial status of Borrower in respect of the financial restrictions contained in this Agreement;

(iii)   Immediately upon any officer of Borrower obtaining knowledge of any condition or event which constitutes or, after notice or lapse of time or both, would constitute an Event of Default, a certificate of such person specifying the nature and period of the existence thereof, and what action Borrower has taken or is taking or proposes to take in respect thereof;

All of the statements referred to in (i) above shall be in conformance with reasonable cash accounting methods consistently applied in accordance with past practices and give representatives of Lender access thereto at all reasonable times, including permission to examine, copy and make abstracts from any such books and records and such other information which might be helpful to Lender in evaluating the status of the loans as it may reasonably request from time to time.

With all financial statements delivered to Lender as provided in (i) above, Borrower shall deliver to Lender a Financial Statement Compliance Certificate in addition to the other information set forth therein, which certifies the Borrower's compliance with the financial covenants set forth herein and that no Event of Default has occurred.

If at any time Borrower has any additional subsidiaries which have financial statements that could be consolidated with those of Borrower under generally accepted accounting principles, the financial statements required by subsections (i) above shall be the financial statements of Borrower and all such subsidiaries prepared on a consolidated and consolidating basis.



(b)  Insurance.  At its own cost, Borrower shall obtain and maintain insurance against (a) loss, destruction or damage to its properties and business of the kinds and in the amounts customarily insured against by corporations with established reputations engaged in the same or similar business as Borrower and, in any event, sufficient to fully protect Lender's interest in the Collateral, and (b) insurance against public liability and third party property damage of the kinds and in the amounts customarily insured against by corporations with established reputations engaged in the same or similar business as Borrower. All such policies shall (i) be issued by financially sound and reputable insurers, (ii) name Lender as an additional insured and, where applicable, as loss payee under a Lender loss payable endorsement satisfactory to Lender, and (iii) shall provide for thirty (30) days written notice to Lender before such policy is altered or canceled.  All of the insurance policies required hereby shall be evidenced by one or more Certificates of Insurance delivered to Lender by Borrower on the Closing Date and at such other times as Lender may request from time to time.

(c)  Taxes.  Borrower shall pay when due all taxes, assessments and other governmental charges imposed upon it or its assets, franchises, business, income or profits before any penalty or interest accrues thereon, and all claims (including, without limitation, claims for labor, services, materials and supplies) for sums which by law might be a lien or charge upon any of its assets, provided that (unless any material item or property would be lost, forfeited or materially damaged as a result thereof) no such charge or claim need be paid if it is being diligently contested in good faith, if Lender is notified in advance of such contest and if Borrower establishes an adequate reserve or other appropriate provision required by generally accepted accounting principles and deposits with Lender cash or bond in an amount acceptable to Lender.

(d)  Compliance with Laws.  Borrower shall comply with all federal, state and local laws, regulations and orders applicable to Borrower or its assets including but not limited to all Environmental Laws, in all respects material to Borrower's business, assets or prospects and shall immediately notify Lender of any violation of any rule, regulation, statute, ordinance, order or law relating to the public health or the environment and of any complaint or notifications received by Borrower regarding to any environmental or safety and health rule, regulation, statute, ordinance or law.  Borrower shall obtain and maintain any and all licenses, permits, franchises, governmental authorizations, patents, trademarks, copyrights or other rights necessary for the ownership of its properties and the advantageous conduct of its business and as may be required from time to time by applicable law.

(e)  Depository/Banking Services.  Lender shall be the principal depository in which substantially all of Borrower's funds are deposited, and the principal bank of account of Borrower, as long as any Obligations are outstanding, and Borrower shall grant Lender the first and last opportunity to provide any corporate banking services required by Borrower and its Affiliates.

(f)  Other Amounts Deemed Loans.  If Borrower fails to pay any tax, assessment, governmental charge or levy or to maintain insurance within the time permitted or required by this Note, or to discharge any Lien prohibited hereby, or to comply with any other Obligation, Lender may, but shall not be obligated to, pay, satisfy, discharge or bond the same for the account of Borrower. To the extent permitted by law and at the option of Lender, all monies so paid by Lender on behalf of Borrower shall be deemed Obligations and Borrower's payments under this Note may be increased to provide for payment of such Obligations plus interest thereon.

(g)  Further Assurances.  Borrower shall execute, acknowledge and deliver, or cause to be executed, acknowledged or delivered, any and all such further assurances and other agreements or instruments, and take or cause to be taken all such other action, as shall be reasonably necessary from time to time to give full effect to the Loan Documents and the transactions contemplated thereby.

8.  DEFINITIONS.  Certain capitalized terms have the meanings set forth on any exhibit hereto, in the Security Agreement, if applicable, or any other Loan Document. All financial terms used herein but not defined on the exhibits, in the Security Agreement, if applicable, or any other Loan Document have the meanings given to them by generally accepted accounting principles. All other undefined terms have the meanings given to them in the Uniform Commercial Code as adopted in the state whose law governs this instrument. The following definitions are used herein:

(a)    "Affiliate" means, as to Borrower, (a) any person or entity which, directly or indirectly, is in control of, is controlled by or is under common control with, Borrower, or (b) any person who is a director, officer or employee (i) of Borrower or (ii) of any person described in the preceding clause (a).

(b)    "Lien" means any security interest, mortgage, pledge, assignment, lien or other encumbrance of any kind, including interests of vendors or lessors under conditional sale contracts or capital leases.

(c)    "Loan Documents" means any and all Rate Management Agreements and each and every document or agreement executed by any party evidencing, guarantying or securing any of the Obligations; and "Loan Document" means any one of the Loan Documents.

(d)    "Obligation(s)" means all loans, advances, indebtedness and each and every other obligation or liability of Borrower owed to each of Lender and/or any affiliate of Fifth Third Bancorp, however created, of every kind and description whether now existing or hereafter arising and whether direct or indirect, primary or as guarantor or surety, absolute or contingent, liquidated or unliquidated, matured or unmatured, participated in whole or in part, created by trust agreement, lease overdraft, agreement or otherwise, whether or not secured by additional collateral, whether originated with Lender or owed to others and acquired by Lender by purchase, assignment or otherwise, and including, without limitation, all loans, advances, indebtedness and each and every obligation or liability arising under the loan document, any and all Rate Management Obligations (as defined in the Loan Documents), letters of credit now or hereafter issued by Lender or any affiliate of Fifth Third Bancorp for the benefit of or at the request of Borrower, all obligations to perform or forbear from performing acts, and agreements, instruments and documents evidencing, guarantying, securing or otherwise executed in connection with any of the foregoing, together with any amendments, modifications and restatements thereof, and all expenses and attorneys' fees incurred by Lender hereunder or any other document, instrument or agreement related to any of the foregoing.

(e)    "Rate Management Agreement" means any agreement, device or arrangement providing for payments which are related to fluctuations of interest rates, exchange rates, forward rates, or equity prices, including, but not limited to, dollar-denominated or cross- currency interest rate exchange agreements, forward currency exchange agreements, interest rate cap or collar protection agreements, forward rate currency or interest rate options, puts and warrants, and any agreement pertaining to equity derivative transactions (e.g., equity or equity index swaps, options, caps, floors, collars and forwards), including without limitation any ISDA Master Agreement between Borrower and Lender or any affiliate of Fifth Third Bancorp, and any schedules, confirmations and documents and other confirming evidence between the parties confirming transactions thereunder, all whether now existing or hereafter arising, and in each case as amended, modified or supplemented from time to time.

(f)    "Rate Management Obligations" means any and all obligations of Borrower to Lender or any affiliate of Fifth Third Bancorp, whether absolute, contingent or otherwise and howsoever and whensoever (whether now or hereafter) created, arising, evidenced or acquired (including all renewals, extensions and modifications thereof and substitutions therefore), under or in connection with (i) any and all Rate Management Agreements, and (ii) any and all cancellations, buy backs, reversals, terminations or assignments of any Rate Management Agreement.

Lender's rights and remedies hereunder are cumulative, and may be exercised together, separately, and in any order. No delay on the part of Lender in the exercise of any such right or remedy shall operate as a waiver. No single or partial exercise by Lender of any right or remedy shall preclude any other further exercise of it or the exercise of any other right or remedy. No waiver or indulgence by Lender of any Event of Default shall be effective unless in writing and signed by Lender, nor shall a waiver on one occasion be construed as a waiver of any other occurrence in the future.

9.    LATE PAYMENTS; DEFAULT RATE; FEES.  If any payment is not paid when due (whether by acceleration or otherwise) or within 10 days thereafter, undersigned agrees to pay to Lender a late payment fee as provided for in any loan agreement or 5% of the payment amount, whichever is greater with a minimum fee of $20.00. After an Event of Default, Borrower agrees to pay to Lender a fixed charge of $25.00, or Borrower agrees that Lender may, without notice, increase the Interest Rate by six percentage points (6%) (the "Default Rate"), whichever is greater. Lender

may impose a non-sufficient funds fee for any check that is presented for payment that is returned for any reason. In addition, Lender may charge loan documentation fees as may be reasonably determined by the Lender.

10.    PREPAYMENT.  Borrower may prepay all or part of this Note, which prepaid amounts shall be applied to the amounts due in reverse order of their due dates.  Upon such prepayments, including involuntary prepayment by acceleration, Borrower shall pay a premium of 2% of the maximum principal amount permitted under this Note.  Partial prepayments shall not excuse any subsequent payment due.

11.    ENTIRE AGREEMENT.  Borrower agrees that there are no conditions or understandings which are not expressed in this Note and the documents referred to herein.

12.    SEVERABILITY.  The declaration of invalidity of any provision of this Note shall not affect any part of the remainder of the provisions.

13.    ASSIGNMENT.  Borrower agrees not to assign any of Borrower's rights, remedies or obligations described in this Note without the prior written consent of Lender, which consent may be withheld in Lender's sole discretion.  Borrower agrees that Lender may assign some or all of its rights and remedies described in this Note without notice to, or prior consent from, the Borrower.

14.    MODIFICATION; WAIVER OF LENDER.  The modification or waiver of any of Borrower's obligations or Lender's rights under this Note must be contained in a writing signed by Lender.  Lender may perform Borrower's obligations, or delay or fail to exercise any of its rights or remedies, without causing a waiver of those obligations or rights. A waiver on one occasion shall not constitute a waiver on another occasion.  Borrower's obligations under this Note shall not be affected if Lender amends, compromises, exchanges, fails to exercise, impairs or releases (i) any of the obligations belonging to any co-borrower, endorser or guarantor, (ii) any of its rights against any co-borrower, guarantor or endorser, or (iii) the Collateral or any other property securing the Obligations.

15.    WAIVER OF BORROWER.  Demand, presentment, protest and notice of dishonor, notice of protest and notice of default are hereby waived by Borrower, and any endorser or guarantor hereof.  Each of Borrower, including but not limited to all co-makers and accommodation makers of this Note, hereby waives all suretyship defenses including but not limited to all defenses based upon impairment of Collateral and all suretyship defenses described in Section 3-605 of the Uniform Commercial Code (the "UCC").  Such waiver is entered to the full extent permitted by Section 3- 605 (i) of the UCC.

16.    GOVERNING LAW; CONSENT TO JURISDICTION.  This Note is delivered in, is intended to be performed in, will be construed and enforceable in accordance with and governed by the internal laws of, the State of Illinois, without regard to principles of conflicts of law.  Borrower agrees that the state and federal courts in the County where the Lender is located shall have exclusive jurisdiction over all matters arising out of this Note, and that service of process in any such proceeding shall be effective if mailed to Borrower at the address set forth herein.

17.    JURY WAIVER.  BORROWER, AND ANY ENDORSER OR GUARANTOR HEREOF, WAIVE THE RIGHT TO A TRIAL BY JURY OF ANY MATTERS ARISING OUT OF THIS NOTE OR THE TRANSACTIONS CONTEMPLATED HEREBY.

18.    WARRANT OF ATTORNEY.  Borrower authorizes any attorney of record to appear for it in any court of record in the State of Illinois, after maturity of this Note, whether by its terms or upon default, acceleration or otherwise, to waive the issuance and service of process, and release all errors, and to confess judgment against it in favor of Lender for the principal sum due herein together with interest, charges, court costs and attorneys' fees.  Stay of execution and all exemptions are hereby waived.  If this Note or any Obligation is referred to an attorney for collection, and the payment is obtained without the entry of a judgment, the obligors shall pay to the holder of such obligations its attorneys' fees.  EACH OF BORROWER AND ANY ENDORSER OR ANY GUARANTOR AGREES THAT AN ATTORNEY WHO IS COUNSEL TO LENDER OR ANY OTHER HOLDER OF SUCH OBLIGATION MAY ALSO ACT AS ATTORNEY OF RECORD FOR BORROWER WHEN TAKING THE ACTIONS DESCRIBED ABOVE IN THIS PARAGRAPH.  BORROWER AGREES THAT ANY ATTORNEY TAKING SUCH ACTIONS MAY BE PAID FOR THOSE SERVICES BY LENDER OR HOLDER OF SUCH OBLIGATION. BORROWER WAIVES ANY CONFLICT OF INTEREST THAT MAY BE CREATED BECAUSE THE ATTORNEY REPRESENTING THE BORROWER IS BEING PAID BY LENDER OR THE HOLDER OF SUCH OBLIGATION.



BORROWER:

Quality Foods-I, LLC, an Illinois limited liability company

By: _____
(Authorized Signer)

_____
Benjamin Laster, Managing Member
(Print Name and Title)



# FOBEARANCE AGREEMENT

This agreement is entered into this 27th day of February 2006, effective the 15$^{h}$ day of February 2006, by and between Fifth Third Bank ("Fifth Third") and Quality Foods I, LLC ("Borrower"), Charlie Watts and Benjamin Laster ("Guarantors").

## UNDERSTANDINGS

WHEREAS, Borrower made, executed and delivered to Fifth Third Bank a promissory note ("Note") dated November 1, 2004, in the original principal amount of $117,115.54. Note is secured by various security agreements ("Security Agreements") covering all assets of Borrower (collectively the "Collateral");

WHEREAS, Guarantors personally guaranteed all the obligations of Borrower to Fifth Third.

WHEREAS, as of February 27, 2006, there was due Fifth Third under the Note the total amount of $109,129.61 consisting of principal of $108,835.74 and interest of $293.87, with interest continuing to accrue thereon at the fixed rate of Prime + 8.1% per annum ($24.48804 per day); and

WHEREAS, the Note matured, the Borrower is presently in default under the terms of the Note and effective August 15, 2005 the parties entered into a Forbearance Agreement regarding the obligations due Fifth Third Bank under the Note and other documents; and

WHEREAS, the Forbearance Agreement has now expired; and

WHEREAS, Borrower and Guarantors have requested an extension of the Forbearance Agreement.

NOW THEREFORE, in consideration of the mutual promises and agreements set forth below, the receipt and sufficiency of which is hereby acknowledged, the parties do hereby agree as follows:

1.    Fifth Third shall forbear in accelerating the balance due under the Note, applying the default rate of interest on the principal balance due and exercising Fifth Third's rights and remedies under the terms of the Note, and Security Agreements for a period ending August 15, 2006.

EXHIBIT B

3.      During the term of this agreement, Borrower shall pay to Fifth Third monthly payments of $1,050.00 commencing on March 15, 2006 and due on the 15th day of each month thereafter until August 15, 2006 when the then remaining balance shall become due and owing.

4.      In the event of any default in payment or any other term hereunder, the remaining balance due under the Note will be immediately become due and payable, without notice to Borrower or Guarantor.

5.      Except as modified herein, the terms and conditions of the Note and Security Agreements shall remain in full force and effect.

6.      This Agreement comprises the entire agreement between the parties with respect to its subject matter and may not be amended except in writing signed by all parties.

IN WITNESS WHEREOF, the parties have executed this Forbearance Agreement on the date first set forth above.

Fifth Third Bank (Chicago)

By: _____
David J. Reid
Its: Assistant Vice President

Quality Foods I, LLC

By: _____
Benjamin Laster
Its:  President

_____
Benjamin Laster, Individually

_____
Charlie Watts, Individually

# FOBEARANCE AGREEMENT

This agreement is entered into this 27th day of February 2006, effective the 15$^h$ day of February 2006, by and between Fifth Third Bank ("Fifth Third") and Quality Foods I, LLC ("Borrower"), Charlie Watts and Benjamin Laster ("Guarantors").

## UNDERSTANDINGS

WHEREAS, Borrower made, executed and delivered to Fifth Third Bank a promissory note ("Note") dated November 1, 2004, in the original principal amount of $117,115.54. Note is secured by various security agreements ("Security Agreements") covering all assets of Borrower (collectively the "Collateral");

WHEREAS, Guarantors personally guaranteed all the obligations of Borrower to Fifth Third.

WHEREAS, as of February 27, 2006, there was due Fifth Third under the Note the total amount of $109,129.61 consisting of principal of $108,835.74 and interest of $293.87, with interest continuing to accrue thereon at the fixed rate of Prime + 8.1% per annum ($24.48804 per day); and

WHEREAS, the Note matured, the Borrower is presently in default under the terms of the Note and effective August 15, 2005 the parties entered into a Forbearance Agreement regarding the obligations due Fifth Third Bank under the Note and other documents; and

WHEREAS, the Forbearance Agreement has now expired; and

WHEREAS, Borrower and Guarantors have requested an extension of the Forbearance Agreement.

NOW THEREFORE, in consideration of the mutual promises and agreements set forth below, the receipt and sufficiency of which is hereby acknowledged, the parties do hereby agree as follows:

1.      Fifth Third shall forbear in accelerating the balance due under the Note, applying the default rate of interest on the principal balance due and exercising Fifth Third's rights and remedies under the terms of the Note, and Security Agreements for a period ending August 15, 2006.

3.      During the term of this agreement, Borrower shall pay to Fifth Third monthly payments of $1,050.00 commencing on March 15, 2006 and due on the 15th day of each month thereafter until August 15, 2006 when the then remaining balance shall become due and owing.

4.      In the event of any default in payment or any other term hereunder, the remaining balance due under the Note will be immediately become due and payable, without notice to Borrower or Guarantor.

5.      Except as modified herein, the terms and conditions of the Note and Security Agreements shall remain in full force and effect.

6.      This Agreement comprises the entire agreement between the parties with respect to its subject matter and may not be amended except in writing signed by all parties.

IN WITNESS WHEREOF, the parties have executed this Forbearance Agreement on the date first set forth above.

Fifth Third Bank (Chicago)

By: _____
          David J. Reid
     Its: Assistant Vice President


Quality Foods I, LLC

By: _____
          Benjamin Laster
     Its:  President

_____
Benjamin Laster, Individually

_____
Charlie Watts, Individually

 **Fifth Third Bank**

Request for Credit Commitment Change in Terms/Short Term Extension

Credit Recommended by:

Recommended by:    DAVID J. REID

Reviewed by:

As of Date:  02/17/2006
Customer:  QUALITY FOODS I LLC
Obligor:  0900772906
Grade:  SS

**CHANGE IN TERMS (Non-Material)/ SHORT TERM EXTENSION (90 Day One Time Max):**

Approve a 6-month forbearance on the subject loan extending the maturity date from 2/15/06 to 8/15/06.  Payments will continue to be $1,050 per month.

| Borrower | Loan # | Type | Commitment | Principal Current Balance | Outstanding | Security | Rate | Maturity Date |
|---|---|---|---|---|---|---|---|---|
| QUALITY FOODS I LLC | 18 | 100 | $0.00 | $110,212.98 | $110,212.98 | All Business Assets | 8.10% | 02/15/2006 |

Approved By:  DAVID J. REID                    Date:  2/18/06

**53 Fifth Third Bank**

Central Operations

## COMMERCIAL LOAN HEADER - All Affiliates

| | | | | |
|---|---|---|---|---|
| Affiliate | 23-FTCH | | **Documents Included in Package (Optional)** | |
| Customer Name(s) | Quality Foods I LLC | | Blue Memo | x | Funding Summary | |
| Tax ID/SSN (Non-Clas Only) | 36-4251422 | | | |
| Obligor - Obligation(s) | 0900772906-00018 | | Promissory Note | | Tickets | |
| CLAS Deal # (if applicable) | n/a | | Guaranty(s) | | Fee Waiver | |
| Effective Date of Loan | 2/15/2006 | | Loan Agreement | | Billpayer Form | |
| Rate Option | Libor | Prime | Reg H | | SBA Authorization | |
| Officer # | 9817-Reid | Assignment Unit # | 2512 | CIP Checklist | |

Place indicate Yes of No for each of the below items:

| | Yes | No | | |
|---|---|---|---|---|
| | | | Other | x | Forbearance Agreement |
| Fountain Square Commercial Funding Corp. (FSCFC) | | X | Other | |
| Shared National Credits (SNC) | | X | Other | |
| If Yes to SNC, state Agent/Lead Bank name | | | Other | |
| Billpayer | X | | | |

## FEE INFORMATION

*Designation of the proper loan origination/purpose and fee type(s) will assure proper fee assessment*

| Private Banking | ☐ | Commercial | x | BLC | | Consumer Purpose | ☐ |

| Fee | Fee Description | Amount | | Fee | Fee Description | Amount |
|---|---|---|---|---|---|---|
| 502 | Note Processing Fee | $ 900.00 | | 400 | Unused Commitment Fee (sys calc) % | |
| 506 | Origination Fee (CRE Loans) | | | 500 | Commitment Fee (Upfront - One-time) | |
| | | | | 501 | Commitment Fee (Fixed - Recurring) | |
| | | | | 503 | Covenant Waiver Fee | |
| | | | | 517 | Foreclosure / Attorney Fee | |
| | | | | 518 | Pass Through Fee | |
| | | | | 519 | Auto Renewing Note Renewal Fee | |

*502 & 506 fees should equal at least the affiliate standard. If these fees are not equal to or greater than the affiliate standard note processing fee, the affiliate standard note processing fee (502) will be set up and the difference between the total of the fees and the affiliate standard note processing fee will be waived.*

## FUNDING INFORMATION

| ACE Transaction Number | | ACE Transaction Amt | |
|---|---|---|---|
| ACE Transaction Number | | ACE Transaction Amt | |
| Funding Ticket Number | | Funding Ticket Amt | |

## LOAN PURPOSE INFORMATION

| CLAS | ☐ | Non - CLAS | x | New | ☐ | Renewal | x |

| Commercial Loan and Lease | | | Consumer |
|---|---|---|---|
| Term | Building / Construction | DFP | Personal Purpose - Term |
| Underfunded Term | **If sub loan, check box | Lease Interim Funding | Personal Purpose - Revolving |
| Revolving | Letter of Credit | Scheduled Balance | Personal Purpose - Draw |
| Draw | SBA | QZAB Loan | Personal Purpose - Demand |
| Demand | Participation Bought | Other | Personal Purpose - Demandable |
| Demandable | Participation Sold | | |
| Guidance Line | Forbearance Agreement | x | |

## INDICATIVE INFORMATION

| | | | |
|---|---|---|---|
| Obligor Type | 49 | NAICS Code | 00722100 |
| Obligation Type | 100 | Collateral Code | 500 |
| Fed Class Code | 599 | Duration Code | 1 - Time (1 Year or less) |
| Purpose Code | 100 | Method of Collection | 11 Mail - 17 Lead Days |

## COMMENTS/SPECIAL INSTRUCTIONS

| | | | | |
|---|---|---|---|---|
| Maturity Date Change from | 2/15/06 | to | 8/15/06 | / Rate Change from | to | Effective Date |
| Change in Payment Due Date from | to | / Change in Payment terms | | |
| Note any fee waivers listed on Blue | | | | |

Sent By: David J. Reid, Assistant Vice President    3/22/06

Phone: 708-482-5905



**McKenna Storer**

ESTABLISHED 1954

*Attorneys at Law*

McKenna, Storer, Rowe, White & Farrug
A PARTNERSHIP INCLUDING LIMITED LIABILITY COMPANIES
666 RUSSEL COURT  SUITE 303
WOODSTOCK, ILLINOIS 60098
(815) 334-9690 · FAX (815) 334-9697
CHICAGO · WAUKEGAN · WOODSTOCK
http://www.mckenna-law.com

SARA E. COOK, LLC - PARTNER
(815) 334-9692
scook@mckenna-law.com

IN REPLY REFER TO FILE NO.
56217

November 20, 2007

**BY FEDERAL EXPRESS DELIVERY**

Charlie Watts
2712 W. 165th Street
Markham, IL 60426-4702

    Re:   DEMAND FOR IMMEDIATE PAYMENT
          GUARANTY OF QUALITY FOODS I & II LOANS

Dear Mr. Watts:

    I represent FH Partners Investments LLC, ("Bank") successor in interest to Fifth Third Bank and Pinnacle Bank. Pursuant to your Unconditional Guaranty of the Term Note ("Note") dated November 1, 2004 executed by Quality Foods I, LLC., "Borrower", in favor of Fifth Third Bank, in the principal amount of $117,155.54, demand is hereby made upon you as Guarantor to pay all amounts outstanding under the Note including the following amounts:

| | |
|---|---|
| Principal | $103,045.48 |
| Interest | $    2,688.72 |
| Release Fee | $        50.00 |

with per diem interest in the amount of $23.18 from and after November 14, 2007, plus all accrued late charges, costs of collection and attorneys fees.

    Quality Foods I, LLC. is in default under the terms of the Note for failure to make payments of principal and interest upon maturity of the Note. The Forbearance Agreement which expired on August 15, 2006 no longer requires forbearance by the Bank from collection action. Unless full payment is made immediately, the Bank will exercise all of its legal rights and remedies, including enforcement of all guaranties. Under the terms of the Guaranty, such action can be taken directly against you without any prior action against the Borrower.

-1-

EXHIBIT C

Pursuant to your Unconditional Guaranty of the Term Note ("Note") dated November 9, 2004 executed by **Quality Foods II, LLC**., "Borrower", in favor of Fifth Third Bank, in the principal amount of $370,353.69, demand is hereby made upon you as Guarantor to pay all amounts outstanding under the Note including the following amounts:

| | |
|---|---|
| Principal | $344,711.91 |
| Interest | $   9,169.70 |
| Release Fee | $        50.00 |

with per diem interest in the amount of $77.56 from and after November 14, 2007, plus all accrued late charges, costs of collection and attorneys fees.

Quality Foods II, LLC. is in default under the terms of the Note for failure to make payments of principal and interest upon maturity of the Note. The Forbearance Agreement which expired on August 15, 2006 no longer requires forbearance by the Bank from collection action. Unless full payment is made immediately, the Bank will exercise all of its legal rights and remedies, including enforcement of all guaranties. Under the terms of the Guaranty, such action can be taken directly against you without any prior action against the Borrower.

Please forward payment in full within the next ten days. If you have any questions, please contact the undersigned.

Very truly yours,

Sara E. Cook

Cc    Terry Harrison, via email



**McKenna Storer** LLC

ESTABLISHED 1954

*Attorneys at Law*

SARA E. COOK, LLC - PARTNER
(815) 334-9692
scook@mckenna-law.com

IN REPLY REFER TO FILE NO

56217

**McKENNA, STORER, ROWE, WHITE & FARRUG**
A PARTNERSHIP INCLUDING LIMITED LIABILITY COMPANIES
666 RUSSEL COURT  SUITE 303
WOODSTOCK, ILLINOIS 60098
(815) 334-9690 · FAX  (815) 334-9697
CHICAGO · WAUKEGAN · WOODSTOCK
http://www.mckenna-law.com

November 20, 2007

**BY FEDERAL EXPRESS DELIVERY**

Benjamin Laster, Managing Member
Quality Foods I, LLC
2562 Western Ave.
Park Forest, IL 60466

Re:    DEMAND FOR IMMEDIATE PAYMENT

Dear Mr. Laster:

I represent FH Partners Investments LLC, ("Bank") successor in interest to Fifth Third Bank and Pinnacle Bank. Pursuant to the Term Note dated November 1, 2004 executed by Quality Foods I, LLC., "Borrower", in favor of Fifth Third Bank, ("Bank") in the principal amount of $117,155.54, demand is hereby made upon Borrower to pay all amounts outstanding under the Note including the following amounts:

| | |
|---|---|
| Principal | $103,045.48 |
| Interest | $  2,688.72 |
| Release Fee | $      50.00 |

with per diem interest in the amount of $23.18 from and after November 14, 2007, plus all accrued late charges, costs of collection and attorneys fees.

Quality Foods I, LLC. is in default under the terms of the Note for failure to make payments of principal and interest upon maturity of the Note. The Forbearance Agreement which expired on August 15, 2006, no longer requires forbearance by the Bank from collection action. Unless full payment is made immediately, the Bank will exercise all of its legal rights and remedies, including enforcement of all guaranties.

-1-

Quality Foods I, LLC
November 20, 2007
page 2

Please forward payment in full within the next ten days. If you have any questions, please contact the undersigned.

Very truly yours,

Sara E. Cook

Cc     Terry Harrison via email



**M<sup>C</sup>Kenna Storer**

ESTABLISHED 1954

*Attorneys at Law*

MCKENNA, STORER, ROWE, WHITE & FARRUG
A PARTNERSHIP INCLUDING LIMITED LIABILITY COMPANIES
666 RUSSEL COURT  SUITE 303
WOODSTOCK, ILLINOIS 60098
(815) 334-9690 · FAX  (815) 334-9697
CHICAGO · WAUKEGAN · WOODSTOCK
http://www.mckenna-law.com

SARA E. COOK, LLC - PARTNER
(815) 334-9692
scook@mckenna-law.com

IN REPLY REFER TO FILE NO.
56217

November 20, 2007

**BY FEDERAL EXPRESS DELIVERY**

Benjamin Laster
4155 Park Glen Ct. NW
Washington, DC 20007-2137

Re:    DEMAND FOR IMMEDIATE PAYMENT
       GUARANTY OF QUALITY FOODS I & II LOANS

Dear Mr. Laster:

I represent FH Partners Investments LLC, ("Bank") successor in interest to Fifth Third Bank and Pinnacle Bank. Pursuant to your Unconditional Guaranty of the Term Note ("Note") dated November 1, 2004 executed by Quality Foods I, LLC., "Borrower", in favor of Fifth Third Bank, in the principal amount of $117,155.54, demand is hereby made upon you as Guarantor to pay all amounts outstanding under the Note including the following amounts:

| | |
|---|---|
| Principal | $103,045.48 |
| Interest | $   2,688.72 |
| Release Fee | $        50.00 |

with per diem interest in the amount of $23.18 from and after November 14, 2007, plus all accrued late charges, costs of collection and attorneys fees.

Quality Foods I, LLC. is in default under the terms of the Note for failure to make payments of principal and interest upon maturity of the Note.  The Forbearance Agreement which expired on August 15, 2006 no longer requires forbearance by the Bank from collection action. Unless full payment is made immediately, the Bank will exercise all of its legal rights and remedies, including enforcement of all guaranties.  Under the terms of the Guaranty, such action can be taken directly against you without any prior action against the Borrower.

-1-

Pursuant to your Unconditional Guaranty of the Term Note ("Note") dated November 9, 2004 executed by **Quality Foods II, LLC.**, "Borrower", in favor of Fifth Third Bank, in the principal amount of $370,353.69, demand is hereby made upon you as Guarantor to pay all amounts outstanding under the Note including the following amounts:

|                |              |
|----------------|--------------|
| Principal      | $344,711.91  |
| Interest       | $   9,169.70 |
| Release Fee    | $      50.00 |

with per diem interest in the amount of $77.56 from and after November 14, 2007, plus all accrued late charges, costs of collection and attorneys fees.

Quality Foods II, LLC. is in default under the terms of the Note for failure to make payments of principal and interest upon maturity of the Note. The Forbearance Agreement which expired on August 15, 2006 no longer requires forbearance by the Bank from collection action. Unless full payment is made immediately, the Bank will exercise all of its legal rights and remedies, including enforcement of all guaranties. Under the terms of the Guaranty, such action can be taken directly against you without any prior action against the Borrower.

Also enclosed herein are copies of the demand letters for Quality Foods I, LLC and Quality Foods II, LLC sent to you at the business addresses.

Please forward payment in full within the next ten days. If you have any questions, please contact the undersigned.

Very truly yours,

Sara E. Cook

encl.
Cc    Terry Harrison, via email