JUDGE CASTILLO
MAGISTRATE JUDGE KEYS

08 C 578

023 - FTCH

 **Fifth Third Bank**

## Term Note

OFFICER No. 09559
$370,353.69

NOTE No. 0900772898-00018
November 9, 2004
(Effective Date)

1.    <u>PROMISE TO PAY.</u> On or before February 9, 2005 (the "Maturity Date"), the undersigned, Quality Foods II, LLC, an Illinois limited liability company located at 5441 South Wentworth Avenue, Chicago, Cook County, Illinois 60609 ("Borrower") for value received, hereby promises to pay to the order of Fifth Third Bank (Chicago), a Michigan banking corporation located at 1701 W. Golf Road, Rolling Meadows, Cook County, Illinois 60008 for itself and as agent for any affiliate of Fifth Third Bancorp (together with its successors and assigns, the "Lender") the sum of Three Hundred Seventy Thousand Three Hundred Fifty Three and 69/100 Dollars ($370,353.69) (the "Borrowing"), plus interest as provided herein, less such amounts as shall have been repaid in accordance with this Note. The outstanding balance of this Note shall appear on a supplemental bank record and is not necessarily the face amount of this Note, which record shall evidence the balance due pursuant to this Note at any time. As used herein, "Local Time" means the time at the office of Lender specified in this Note.

Principal and interest payments shall be made at Lender's address above unless otherwise designated by Lender in writing. Each payment hereunder shall be applied first to advanced costs, charges and fees, then to accrued interest, and then to principal.

The outstanding balance of this Note shall be due and payable in 2 installments of principal and interest, each in the amount of $7,358.06 on the 9th day of each calendar month beginning on December 9, 2004; provided that the entire principal balance, together with all accrued and unpaid interest and any other charges, advances and fees, if any, outstanding hereunder shall be due and payable in full on the earlier of the Maturity Date or upon acceleration of the Note.

The principal sum outstanding shall bear interest at a fixed rate per annum equal to 8.1% (the "Interest Rate"). Interest shall be calculated based on a 360-day year and charged for the actual number of days elapsed, and shall be payable on the 9th day of each month beginning on December 9, 2004.

Notwithstanding any provision to the contrary in this Note, in no event shall the interest rate charged on the Borrowing exceed the maximum rate of interest permitted under applicable state and/or federal usury law. Any payment of interest that would be deemed unlawful under applicable law for any reason shall be deemed received on account of, and will automatically be applied to reduce, the principal sum outstanding and any other sums (other than interest) due and payable to Lender under this Note, and the provisions hereof shall be deemed amended to provide for the highest rate of interest permitted under applicable law.

2.    <u>SECURITY AGREEMENT.</u> To secure repayment of this Note and all other Obligations (as defined below) together with all modifications, extensions and renewals thereof, Borrower hereby grants Lender a continuing security interest in all right, title and interest of Borrower in and to the following property, whether now owned or hereafter acquired (collectively, the "Collateral"): (i) any and all property in which Lender and/or any affiliate of Fifth Third Bancorp (including without limitation Fifth Third Securities, Inc.) is at any time granted a lien for any Obligation including, without limitation, all collateral specified in any of the documents executed in connection with this Note, (ii) all property in possession of Lender and/or any affiliate of Fifth Third Bancorp (including without limitation Fifth Third Securities, Inc.) including, without limitation, money, securities, instruments, documents, letters of credit, chattel paper, or other property delivered to Lender in transit, for safekeeping, or for collection or exchange for other property, (iii) all rights to payment from, and claims against, Lender and/or any affiliate of Fifth Third Bancorp (including without limitation Fifth Third Securities, Inc.), and (iv) any and all additions, substitutions, dividends, distributions (in the form of cash, property, stock or other securities) and other rights related or in addition to the foregoing, and any and all proceeds therefrom (the "Distributions"). Borrower agrees to immediately deliver to Lender all documents, certificates and instruments evidencing the Distributions and any additional documentation requested by Lender to perfect and protect Lender's security interest therein, and until such delivery Borrower shall hold the same in trust for Lender.

EXHIBIT D

Borrower also grants Lender a security interest in all of the Collateral as agent for all affiliates of Fifth Third Bancorp for all Obligations of Borrower to such affiliates. Said security interest shall not be enforced to the extent prohibited by the Truth in Lending Act as implemented by Federal Reserve Regulation Z.

3.    USE OF PROCEEDS.  Borrower certifies that the proceeds of this loan are to be used for business purposes.

4.    RENEWAL.  This Note is issued, not as a payment toward, but as a continuation of, the obligations of Borrower to Lender pursuant to that certain note dated August 1, 2004, in the principal amount of $377,250.73 (together with all prior amendments thereto or restatements thereof the "Prior Note").  Accordingly, this Note shall not be construed as a novation or extinguishment of, the obligations arising under the Prior Note, and its issuance shall not affect the priority of any security interest granted in connection with the Prior Note.

5.    NOTE PROCESSING FEE.  Lender may charge, and Borrower agrees to pay on the above Effective Date, a note processing fee in the amount of $600.00.

6.    REPRESENTATIONS AND WARRANTIES.  Borrower hereby warrants and represents to Lender the following:

(a)    Organization and Qualification.  Borrower is duly organized, validly existing and in good standing under the laws of the State of its organization, has the power and authority to carry on its business and to enter into and perform all documents relating to this loan transaction, and is qualified and licensed to do business in each jurisdiction in which such qualification or licensing is required.  All information provided to Lender with respect to Borrower and its operations is true and correct.

(b)    Due Authorization.  The execution, delivery and performance by Borrower of the Loan Documents have been duly authorized by all necessary company action, and shall not contravene any law or any governmental rule or order binding on Borrower, or the articles of organization and operating agreement of Borrower, nor violate any agreement or instrument by which Borrower is bound nor result in the creation of a Lien on any assets of Borrower except the Lien granted to Lender herein.  Borrower has duly executed and delivered to Lender the Loan Documents and they are valid and binding obligations of Borrower enforceable according to their respective terms, except as limited by equitable principles and by bankruptcy, insolvency or similar laws affecting the rights of creditors generally.  No notice to, or consent by, any governmental body is needed in connection with this transaction.

(c)    Litigation.  There are no suits or proceedings pending or threatened against or affecting Borrower, and no proceedings before any governmental body are pending or threatened against Borrower.

(d)    Business.  Borrower is not a party to or subject to any agreement or restriction that may have a material adverse effect on Borrower's business, properties or prospects.  Borrower has all franchises, authorizations, patents, trademarks, copyrights and other rights necessary to advantageously conduct its business. They are all in full force and effect and are not in known conflict with the rights of others.

(e)    Licenses, etc.  Borrower has obtained any and all licenses, permits, franchises, governmental authorizations, patents, trademarks, copyrights or other rights necessary for the ownership of its properties and the advantageous conduct of its business.  Borrower possesses adequate licenses, patents, patent applications, copyrights, trademarks, trademark applications, and trade names to continue to conduct its business as heretofore conducted by it, without any conflict with the rights of any other person or entity.   All of the foregoing are in full force and effect and none of the foregoing are in known conflict with the rights of others.

(f)    Laws and Taxes.  Borrower is in material compliance with all laws, regulations, rulings, orders, injunctions, decrees, conditions or other requirements applicable to or imposed upon Borrower by any law or by any governmental authority, court or agency.  Borrower has filed all required tax returns and reports that are now required to be filed by it in connection with any federal, state and local tax, duty or charge levied, assessed or imposed upon Borrower or its assets, including unemployment, social security, and real estate taxes.  Borrower

has paid all taxes which are now due and payable. No taxing authority has asserted or assessed any additional tax liabilities against Borrower which are outstanding on this date, and Borrower has not filed for any extension of time for the payment of any tax or the filing of any tax return or report.

(g)    Title. Borrower has good and marketable title to the assets reflected on the most recent balance sheet submitted to Lender, free and clear from all liens and encumbrances of any kind, except for (collectively, the "Permitted Liens") (a) current taxes and assessments not yet due and payable, (b) liens and encumbrances, if any, reflected or noted on such balance sheet or notes thereto, (c) assets disposed of in the ordinary course of business, and (d) any security interests, pledges, assignments or mortgages granted to Lender to secure the repayment or performance of the Obligations.

(h)    Subsidiaries and Partnerships. Borrower has no subsidiaries and is not a party to any partnership agreement or joint venture agreement.

7.    AFFIRMATIVE COVENANTS. Borrower covenants with, and represents and warrants to, Lender that, from and after the execution date of the Loan Documents until the Obligations are paid and satisfied in full:

(a)    Financial Statements. Borrower shall maintain a standard and modern system for accounting and shall furnish to Lender:

(i)    Within 90 days after the end of each fiscal year, a copy of Borrower's internally prepared consolidated financial statements for that year in a form reasonably acceptable to Lender, prepared and certified as complete and correct by the principal financial officer of Borrower;

(ii)    With the statements submitted above, a certificate signed by the principal financial officer of Borrower, (i) stating he is familiar with all documents relating to Lender and that no Event of Default specified herein, nor any event which upon notice or lapse of time, or both would constitute such an Event of Default, has occurred, or if any such condition or event existed or exists, specifying it and describing what action Borrower has taken or proposes to take with respect thereto, and (ii) setting forth, in summary form, figures showing the financial status of Borrower in respect of the financial restrictions contained herein;

(iii)    Immediately upon any officer of Borrower obtaining knowledge of any condition or event which constitutes or, after notice or lapse of time or both, would constitute an Event of Default, a certificate of such person specifying the nature and period of the existence thereof, and what action Borrower has taken or is taking or proposes to take in respect thereof;

All of the statements referred to in (i) above shall be in conformance with reasonable cash accounting methods consistently applied in accordance with past practices and give representatives of Lender access thereto at all reasonable times, including permission to examine, copy and make abstracts from any such books and records and such other information which might be helpful to Lender in evaluating the status of the loans as it may reasonably request from time to time.

With all financial statements delivered to Lender as provided in (i) above, Borrower shall deliver to Lender a Financial Statement Compliance Certificate in addition to the other information set forth therein, which certifies the Borrower's compliance with the financial covenants set forth herein and that no Event of Default has occurred.

If at any time Borrower has any additional subsidiaries which have financial statements that could be consolidated with those of Borrower under generally accepted accounting principles, the financial statements required by subsections (i) above shall be the financial statements of Borrower and all such subsidiaries prepared on a consolidated and consolidating basis.

(b)    Insurance. At its own cost, Borrower shall obtain and maintain insurance against (a) loss, destruction or damage to its properties and business of the kinds and in the amounts customarily insured against

by corporations with established reputations engaged in the same or similar business as Borrower and, in any event, sufficient to fully protect Lender's interest in the Collateral, and (b) insurance against public liability and third party property damage of the kinds and in the amounts customarily insured against by corporations with established reputations engaged in the same or similar business as Borrower. All such policies shall (i) be issued by financially sound and reputable insurers, (ii) name Lender as an additional insured and, where applicable, as loss payee under a Lender loss payable endorsement satisfactory to Lender, and (iii) shall provide for thirty (30) days written notice to Lender before such policy is altered or canceled.  All of the insurance policies required hereby shall be evidenced by one or more Certificates of Insurance delivered to Lender by Borrower on the Closing Date and at such other times as Lender may request from time to time.

(c)     Taxes.  Borrower shall pay when due all taxes, assessments and other governmental charges imposed upon it or its assets, franchises, business, income or profits before any penalty or interest accrues thereon, and all claims (including, without limitation, claims for labor, services, materials and supplies) for sums which by law might be a lien or charge upon any of its assets, provided that (unless any material item or property would be lost, forfeited or materially damaged as a result thereof) no such charge or claim need be paid if it is being diligently contested in good faith, if Lender is notified in advance of such contest and if Borrower establishes an adequate reserve or other appropriate provision required by generally accepted accounting principles and deposits with Lender cash or bond in an amount acceptable to Lender.

(d)     Compliance with Laws.  Borrower shall comply with all federal, state and local laws, regulations and orders applicable to Borrower or its assets including but not limited to all Environmental Laws, in all respects material to Borrower's business, assets or prospects and shall immediately notify Lender of any violation of any rule, regulation, statute, ordinance, order or law relating to the public health or the environment and of any complaint or notifications received by Borrower regarding any environmental or safety and health rule, regulation, statute, ordinance or law.  Borrower shall obtain and maintain any and all licenses, permits, franchises, governmental authorizations, patents, trademarks, copyrights or other rights necessary for the ownership of its properties and the advantageous conduct of its business and as may be required from time to time by applicable law.

(e)     Depository/Banking Services.  Lender shall be the principal depository in which substantially all of Borrower's funds are deposited, and the principal bank of account of Borrower, as long as any Obligations are outstanding, and Borrower shall grant Lender the first and last opportunity to provide any corporate banking services required by Borrower and its Affiliates.

(f)     Other Amounts Deemed Loans.  If Borrower fails to pay any tax, assessment, governmental charge or levy or to maintain insurance within the time permitted or required by this Note, or to discharge any Lien prohibited hereby, or to comply with any other Obligation, Lender may, but shall not be obligated to, pay, satisfy, discharge or bond the same for the account of Borrower. To the extent permitted by law and at the option of Lender, all monies so paid by Lender on behalf of Borrower shall be deemed Obligations and Borrower's payments under this Note may be increased to provide for payment of such Obligations plus interest thereon.

(g)     Further Assurances.  Borrower shall execute, acknowledge and deliver, or cause to be executed, acknowledged or delivered, any and all such further assurances and other agreements or instruments, and take or cause to be taken all such other action, as shall be reasonably necessary from time to time to give full effect to the Loan Documents and the transactions contemplated thereby.

8.     DEFINITIONS.  Certain capitalized terms have the meanings set forth on any exhibit hereto, in the Security Agreement, if applicable, or any other Loan Document.  All financial terms used herein but not defined on the exhibits, in the Security Agreement, if applicable, or any other Loan Document have the meanings given to them by generally accepted accounting principles.  All other undefined terms have the meanings given to them in the Uniform Commercial Code as adopted in the state whose law governs this instrument.  The following definitions are used herein:

(a)     "Affiliate" means, as to Borrower, (a) any person or entity which, directly or indirectly, is in control of, is controlled by or is under common control with, Borrower, or (b) any person who is a director, officer or employee (i) of Borrower or (ii) of any person described in the preceding clause (a).



(b)    "Lien" means any security interest, mortgage, pledge, assignment, lien or other encumbrance of any kind, including interests of vendors or lessors under conditional sale contracts or capital leases.

(c)    "Loan Documents" means any and all Rate Management Agreements and each and every document or agreement executed by any party evidencing, guarantying or securing any of the Obligations; and "Loan Document" means any one of the Loan Documents.

(d)    "Obligation(s)" means all loans, advances, indebtedness and each and every other obligation or liability of Borrower owed to each of Lender and/or any affiliate of Fifth Third Bancorp, however created, of every kind and description whether now existing or hereafter arising and whether direct or indirect, primary or as guarantor or surety, absolute or contingent, liquidated or unliquidated, matured or unmatured, participated in whole or in part, created by trust agreement, lease overdraft, agreement or otherwise, whether or not secured by additional collateral, whether originated with Lender or owed to others and acquired by Lender by purchase, assignment or otherwise, and including, without limitation, all loans, advances, indebtedness and each and every obligation or liability arising under the loan document, any and all Rate Management Obligations (as defined in the Loan Documents), letters of credit now or hereafter issued by Lender or any affiliate of Fifth Third Bancorp for the benefit of or at the request of Borrower, all obligations to perform or forbear from performing acts, and agreements, instruments and documents evidencing, guarantying, securing or otherwise executed in connection with any of the foregoing, together with any amendments, modifications and restatements thereof, and all expenses and attorneys' fees incurred by Lender hereunder or any other document, instrument or agreement related to any of the foregoing.

(e)    "Rate Management Agreement" means any agreement, device or arrangement providing for payments which are related to fluctuations of interest rates, exchange rates, forward rates, or equity prices, including, but not limited to, dollar-denominated or cross- currency interest rate exchange agreements, forward currency exchange agreements, interest rate cap or collar protection agreements, forward rate currency or interest rate options, puts and warrants, and any agreement pertaining to equity derivative transactions (e.g., equity or equity index swaps, options, caps, floors, collars and forwards), including without limitation any ISDA Master Agreement between Borrower and Lender or any affiliate of Fifth Third Bancorp, and any schedules, confirmations and documents and other confirming evidence between the parties confirming transactions thereunder, all whether now existing or hereafter arising, and in each case as amended, modified or supplemented from time to time.

(f)    "Rate Management Obligations" means any and all obligations of Borrower to Lender or any affiliate of Fifth Third Bancorp, whether absolute, contingent or otherwise and howsoever and whensoever (whether now or hereafter) created, arising, evidenced or acquired (including all renewals, extensions and modifications thereof and substitutions therefore), under or in connection with (i) any and all Rate Management Agreements, and (ii) any and all cancellations, buy backs, reversals, terminations or assignments of any Rate Management Agreement.

9.    <u>EVENTS OF DEFAULT.</u>  Upon the occurrence of any of the following events (each, an "Event of Default"), Lender may, at its option, without any demand or notice whatsoever, declare this Note and all Obligations to be fully due and payable in their aggregate amount, together with accrued interest and all prepayment premiums, fees, and charges applicable thereto:

(a)    Any failure to make any payment when due of principal or accrued interest on this Note or any other Obligation and such nonpayment remains uncured for a period of 10 days thereafter.

(b)    Any representation or warranty of Borrower set forth in this Note or in any agreement, instrument, document, certificate or financial statement evidencing, guarantying, securing or otherwise related to, this Note or any other Obligation shall be materially inaccurate or misleading.

(c)    Borrower shall fail to observe or perform any other term or condition of this Note or any other term or condition set forth in any agreement, instrument, document, certificate or financial statement evidencing, guarantying or otherwise related to this Note or any other Obligation, or Borrower shall otherwise default in the observance or performance of any covenant or agreement set forth in any of the foregoing for a period of 30 days.

(d)      The death, legal incompetence or dissolution of Borrower or of any endorser or guarantor of the Obligations, or the merger or consolidation of any of the foregoing with a third party, or the lease, sale or other conveyance of a material part of the assets or business of any of the foregoing to a third party outside the ordinary course of its business, or the lease, purchase or other acquisition of a material part of the assets or business of a third party by any of the foregoing.

(e)      Any failure to submit to Lender current financial information upon request.

(f)      The creation of any Lien (except a lien to Lender) on, the institution of any garnishment proceedings by attachment, levy or otherwise against, the entry of a judgment against, or the seizure of, any of the property of Borrower or any endorser or guarantor hereof including, without limitation, any property deposited with Lender.

(g)      In the judgment of Lender, any material adverse change occurs in the existing or prospective financial condition of Borrower that may affect the ability of Borrower to repay the Obligations, or the Lender deems itself insecure.

(h)      A commencement by the Borrower or any endorser or guarantor of the Obligations of a voluntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect; or the entry of a decree or order for relief in respect of the Borrower or any endorser or guarantor of the Obligations in a case under any such law or appointing a receiver, liquidator, assignee, custodian, trustee, sequestrator (or other similar official) of the Borrower or any endorser or guarantor of the Obligations, or for any substantial part of the property of Borrower or any endorser or guarantor of the Obligations, or ordering the wind-up or liquidation of the affairs of Borrower or any endorser or guarantor of the Obligations; or the filing and pendency for 30 days without dismissal of a petition initiating an involuntary case under any such bankruptcy, insolvency or similar law; or the making by Borrower or any endorser or guarantor of the Obligations of any general assignment for the benefit of creditors; or the failure of the Borrower or any endorser or guarantor of the Obligations generally to pay its debts as such debts become due; or the taking of action by the Borrower or any endorser or guarantor of the Obligations in furtherance of any of the foregoing.

(i)      Nonpayment by the Borrower of any Rate Management Obligation when due or the breach by the Borrower of any term, provision or condition contained in any Rate Management Agreement.

(j)      Any sale, conveyance or transfer of any rights in the Collateral securing the Obligations, or any destruction, loss or damage of or to the Collateral in any material respect.

10.      **REMEDIES.**  In addition to any other remedy permitted by law, Lender may at any time, without notice, apply the Collateral to this Note or such other Obligations, whether due or not, and Lender may, at its option, proceed to enforce and protect its rights by an action at law or in equity or by any other appropriate proceedings; provided that this Note and the Obligations shall be accelerated automatically and immediately if the Event of Default is a filing under the Bankruptcy Code.  Notwithstanding any other legal or equitable rights of Lender, Lender, in the Event of Default, is (a) hereby irrevocably appointed and constituted attorney-in-fact, with full power of substitution, to exercise all rights of ownership with respect to the Collateral including, but not limited to, the right to collect all income or other distributions arising therefrom and to exercise all voting rights connected with the Collateral; and (b) is hereby given full power to collect, sell, assign, transfer and deliver all of said Collateral or any part thereof, or any substitutes therefore, or any additions thereto, through any private or public sale without either demand or notice to Borrower, or any advertisement, the same being hereby expressly waived, at which sale Lender is authorized to purchase said property or any part thereof, free from any right of redemption on the part of Borrower, which is hereby expressly waived and released.  In case of sale for any cause, after deducting all costs and expenses of every kind, Lender may apply, as it shall deem proper, the residue of the proceeds of such sale toward the payment of any one or more or all of the Obligations of Borrower, whether due or not due, to Lender; after such application and the return of any surplus, Borrower agrees to be and remains liable to Lender for any and every deficiency after application as aforesaid upon this and any other Obligation.  Borrower shall pay all costs of collection incurred by Lender, including its attorney's fees, if this Note is referred to an attorney for collection, whether or not payment is obtained before entry of judgment, which costs and fees are Obligations secured by the Collateral.

Lender's rights and remedies hereunder are cumulative, and may be exercised together, separately, and in any order. No delay on the part of Lender in the exercise of any such right or remedy shall operate as a waiver. No single or partial exercise by Lender of any right or remedy shall preclude any other further exercise of it or the exercise of any other right or remedy. No waiver or indulgence by Lender of any Event of Default shall be effective unless in writing and signed by Lender, nor shall a waiver on one occasion be construed as a waiver of any other occurrence in the future.

11.     LATE PAYMENTS; DEFAULT RATE; FEES.  If any payment is not paid when due (whether by acceleration or otherwise) or within 10 days thereafter, undersigned agrees to pay to Lender a late payment fee as provided for in any loan agreement or 5% of the payment amount, whichever is greater with a minimum fee of $20.00. After an Event of Default, Borrower agrees to pay to Lender a fixed charge of $25.00, or Borrower agrees that Lender may, without notice, increase the Interest Rate by six percentage points (6%) (the "Default Rate"), whichever is greater. Lender may impose a non-sufficient funds fee for any check that is presented for payment that is returned for any reason. In addition, Lender may charge loan documentation fees as may be reasonably determined by the Lender.

12.     PREPAYMENT.  Borrower may prepay all or part of this Note, which prepaid amounts shall be applied to the amounts due in reverse order of their due dates. Upon such prepayments, including involuntary prepayment by acceleration, Borrower shall pay a premium of 2% of the maximum principal amount permitted under this Note. Partial prepayments shall not excuse any subsequent payment due.

13.     ENTIRE AGREEMENT.  Borrower agrees that there are no conditions or understandings which are not expressed in this Note and the documents referred to herein.

14.     SEVERABILITY.  The declaration of invalidity of any provision of this Note shall not affect any part of the remainder of the provisions.

15.     ASSIGNMENT.  Borrower agrees not to assign any of Borrower's rights, remedies or obligations described in this Note without the prior written consent of Lender, which consent may be withheld in Lender's sole discretion. Borrower agrees that Lender may assign some or all of its rights and remedies described in this Note without notice to, or prior consent from, the Borrower.

16.     MODIFICATION; WAIVER OF LENDER.  The modification or waiver of any of Borrower's obligations or Lender's rights under this Note must be contained in a writing signed by Lender. Lender may perform Borrower's obligations, or delay or fail to exercise any of its rights or remedies, without causing a waiver of those obligations or rights. A waiver on one occasion shall not constitute a waiver on another occasion. Borrower's obligations under this Note shall not be affected if Lender amends, compromises, exchanges, fails to exercise, impairs or releases (i) any of the obligations belonging to any co-borrower, endorser or guarantor, (ii) any of its rights against any co-borrower, guarantor or endorser, or (iii) the Collateral or any other property securing the Obligations.

17.     WAIVER OF BORROWER.  Demand, presentment, protest and notice of dishonor, notice of protest and notice of default are hereby waived by Borrower, and any endorser or guarantor hereof. Each of Borrower, including but not limited to all co-makers and accommodation makers of this Note, hereby waives all suretyship defenses including but not limited to all defenses based upon impairment of Collateral and all suretyship defenses described in Section 3-605 of the Uniform Commercial Code (the "UCC"). Such waiver is entered to the full extent permitted by Section 3- 605 (i) of the UCC.

18.     GOVERNING LAW; CONSENT TO JURISDICTION.  This Note is delivered in, is intended to be performed in, will be construed and enforceable in accordance with and governed by the internal laws of, the State of Illinois, without regard to principles of conflicts of law. Borrower agrees that the state and federal courts in the County where the Lender is located shall have exclusive jurisdiction over all matters arising out of this Note, and that service of process in any such proceeding shall be effective if mailed to Borrower at the address set forth herein.

19.     JURY WAIVER.  BORROWER, AND ANY ENDORSER OR GUARANTOR HEREOF, WAIVE THE RIGHT TO A TRIAL BY JURY OF ANY MATTERS ARISING OUT OF THIS NOTE OR THE TRANSACTIONS CONTEMPLATED HEREBY.



20.    <u>WARRANT OF ATTORNEY.</u> Borrower authorizes any attorney of record to appear for it in any court of record in the State of Illinois, after maturity of this Note, whether by its terms or upon default, acceleration or otherwise, to waive the issuance and service of process, and release all errors, and to confess judgment against it in favor of Lender for the principal sum due herein together with interest, charges, court costs and attorneys' fees. Stay of execution and all exemptions are hereby waived. If this Note or any Obligation is referred to an attorney for collection, and the payment is obtained without the entry of a judgment, the obligors shall pay to the holder of such obligations its attorneys' fees. EACH OF BORROWER AND ANY ENDORSER OR ANY GUARANTOR AGREES THAT AN ATTORNEY WHO IS COUNSEL TO LENDER OR ANY OTHER HOLDER OF SUCH OBLIGATION MAY ALSO ACT AS ATTORNEY OF RECORD FOR BORROWER WHEN TAKING THE ACTIONS DESCRIBED ABOVE IN THIS PARAGRAPH. BORROWER AGREES THAT ANY ATTORNEY TAKING SUCH ACTIONS MAY BE PAID FOR THOSE SERVICES BY LENDER OR HOLDER OF SUCH OBLIGATION. BORROWER WAIVES ANY CONFLICT OF INTEREST THAT MAY BE CREATED BECAUSE THE ATTORNEY REPRESENTING THE BORROWER IS BEING PAID BY LENDER OR THE HOLDER OF SUCH OBLIGATION.

BORROWER:

Quality Foods II, LLC, an Illinois limited liability company

By: _____

(Authorized Signer)

_____

Benjamin Laster, Managing Member

(Print Name and Title)



**McKenna** LLC
**Storer** )07

ESTABLISHED 1954

*Attorneys at Law*

SARA E. COOK, LLC - PARTNER
(815) 334-9692
scook@mckenna-law.com

IN REPLY REFER TO FILE NO
56217

McKenna, Storer, Rowe, White & Farrug
A PARTNERSHIP INCLUDING LIMITED LIABILITY COMPANIES
666 RUSSEL COURT  SUITE 303
WOODSTOCK, ILLINOIS 60098
(815) 334-9690 - FAX  (815) 334-9697
CHICAGO • WAUKEGAN • WOODSTOCK
http://www.mckenna-law.com

November 20, 2007

**BY FEDERAL EXPRESS DELIVERY**

Benjamin Laster, Managing Member
Quality Foods II, LLC
5441 S. Wentworth Ave.
Chicago, IL 60609

    Re:   DEMAND FOR IMMEDIATE PAYMENT

Dear Mr. Laster:

    I represent FH Partners Investments LLC, ("Bank") successor in interest to Fifth Third Bank and Pinnacle Bank. Pursuant to the Term Note dated November 9, 2004 executed by Quality Foods II, LLC., "Borrower", in favor of Fifth Third Bank, in the principal amount of $370,353.69, demand is hereby made upon Borrower to pay all amounts outstanding under the Note including the following amounts:

| | |
|---|---|
| Principal | $344,711.91 |
| Interest | $  9,169.70 |
| Release Fee | $     50.00 |

with per diem interest in the amount of $77.56 from and after November 14, 2007, plus all accrued late charges, costs of collection and attorneys fees.

    Quality Foods II, LLC. is in default under the terms of the Note for failure to make payments of principal and interest upon maturity of the Note. The Forbearance Agreement which expired on August 15, 2006 no longer requires forbearance by the Bank from collection action. Unless full payment is made immediately, the Bank will exercise all of its legal rights and remedies, including enforcement of all guaranties.

EXHIBIT E

Quality Foods II, LLC
November 20, 2007
page 2

     Please forward payment in full within the next ten days. If you have any questions, please contact the undersigned.

Very truly yours,

Sara E. Cook

Cc    Terry Harrison via email

# COMMERCIAL SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call | Collateral | Account | Officer | Initials |
|-----------|-----------|----------|---------|------|------------|---------|---------|----------|
| $200,000.00 | 07-21-1999 | 08-01-2004 | | | | | 2102 | |
| References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item. | | | | | | | | |

**Borrower:** QUALITY FOODS I, L.L.C. D/B/A POPEYES **Lender:** PINNACLE BANK
RESTAURANT (TIN: 36–4251422)                                            6000 W. Cermak Rd.
2562 WESTERN AVENUE                                                        Cicero, IL 60804
PARK FOREST, IL 60466

THIS COMMERCIAL SECURITY AGREEMENT is entered into between QUALITY FOODS I, L.L.C. D/B/A POPEYES RESTAURANT (referred to below as "Grantor"); and PINNACLE BANK (referred to below as "Lender"). For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**DEFINITIONS.** The following words shall have the following meanings when used in this Agreement. Terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. All references to dollar amounts shall mean amounts in lawful money of the United States of America.

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Collateral.** The word "Collateral" means the following described property of Grantor, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

THE FOLLOWING PROPERTY OF THE DEBTOR WHETHER NOW OR HEREAFTER EXISTING OR ACQUIRED AND WHETHER NOW OR HEREAFTER LOCATED: ALL ACCOUNTS, NOTES, CONTRACT RIGHTS, CHATTEL PAPER, INSTRUMENTS, DOCUMENTS, CONDITIONAL SALES CONTRACTS, GOODS, INVENTORY, EQUIPMENT, MACHINERY, FURNITURE, FIXTURES, VEHICLES, GENERAL INTANGIBLES, INSURANCE POLICIES, ACCEPTANCES, AND ALL PROCEEDS OF ANY OF THE FOREGOING

In addition, the word "Collateral" includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(a) All attachments, accessions, accessories, tools, parts, supplies, increases, and additions to and all replacements of and substitutions for any property described above.

(b) All products and produce of any of the property described in this Collateral section.

(c) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, or other disposition of any of the property described in this Collateral section.

(d) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section.

(e) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**Event of Default.** The words "Event of Default" mean and include without limitation any of the Events of Default set forth below in the section titled "Events of Default."

**Grantor.** The word "Grantor" means QUALITY FOODS I, L.L.C. D/B/A POPEYES RESTAURANT, its successors and assigns.

**Guarantor.** The word "Guarantor" means and includes without limitation each and all of the guarantors, sureties, and accommodation parties in connection with the Indebtedness.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note, including all principal and interest, together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents. In addition, the word "Indebtedness" includes all other obligations, debts and liabilities, plus interest thereon, of Grantor, or any one or more of them, to Lender, as well as all claims by Lender against Grantor, or any one or more of them, whether existing now or later; whether they are voluntary or involuntary, due or not due, direct or indirect, absolute or contingent, liquidated or unliquidated; whether Grantor may be liable individually or jointly with others; whether Grantor may be obligated as guarantor, surety, accommodation party or otherwise; whether recovery upon such indebtedness may be or hereafter may become barred by any statute of limitations; and whether such indebtedness may be or hereafter may become otherwise unenforceable.

**Lender.** The word "Lender" means PINNACLE BANK, its successors and assigns.

**Note.** The word "Note" means the note or credit agreement dated July 21, 1999, in the principal amount of $200,000.00 from QUALITY FOODS I, L.L.C. D/B/A POPEYES RESTAURANT to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for the note or credit agreement.

**Related Documents.** The words "Related Documents" mean and include without limitation all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**RIGHT OF SETOFF.** Grantor hereby grants Lender a contractual security interest in and hereby assigns, conveys, delivers, pledges, and transfers all of Grantor's right, title and interest in and to Grantor's accounts with Lender (whether checking, savings, or some other account), including all accounts held jointly with someone else and all accounts Grantor may open in the future, excluding, however, all IRA and Keogh accounts, and all trust accounts for which the grant of a security interest would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all Indebtedness against any and all such accounts.

**OBLIGATIONS OF GRANTOR.** Grantor warrants and covenants to Lender as follows:

**Organization.** Grantor is a limited liability company which is duly organized, validly existing, and in good standing under the laws of the State of Illinois.

**Authorization.** The execution, delivery, and performance of this Agreement by Grantor have been duly authorized by all necessary action by Grantor and do not conflict with, result in a violation of, or constitute a default under (a) any provision of the membership agreement, or any agreement or other instrument binding upon Grantor or (b) any law, governmental regulation, court decree, or order applicable to Grantor.

**Perfection of Security Interest.** Grantor agrees to execute such financing statements and to take whatever other actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper if not delivered to Lender for possession by Lender. Grantor hereby appoints Lender as its irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect or to continue the security interest granted in this Agreement. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral. Grantor promptly will notify Lender before any change in Grantor's name including any change to the assumed business names of Grantor. This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Grantor may not be indebted to Lender.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its membership agreement does not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, the Collateral is enforceable in accordance with its terms, is genuine, and complies with applicable laws concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral.

**Location of the Collateral.** Grantor, upon request of Lender, will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (a) all real property owned or being purchased by Grantor; (b) all real property being rented or leased by Grantor; (c) all storage facilities owned, rented, leased, or being used by Grantor; and (d) all other properties where Collateral is or may be located. Except in the ordinary course of its business, Grantor shall not remove the Collateral from its existing locations without the prior written consent of Lender.

EXHIBIT F

**Removal of Collateral.** Grantor shall keep the Collateral (or to the extent the Collateral consists of intangible property such as accounts, the records concerning the Collateral) at Grantor's address shown above, or at such other locations as are acceptable to Lender. Except in the ordinary course of its business, including the sales of inventory, Grantor shall not remove the Collateral from its existing locations without the prior written consent of Lender. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of Illinois, without the prior written consent of Lender.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. While Grantor is not in default under this Agreement, Grantor may sell inventory, but only in the ordinary course of its business and only to buyers who qualify as a buyer in the ordinary course of business. A sale in the ordinary course of Grantor's business does not include a transfer in partial or total satisfaction of a debt or any bulk sale. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that it holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Collateral Schedules and Locations.** Insofar as the Collateral consists of inventory, Grantor shall deliver to Lender, as often as Lender shall require, such lists, descriptions, and designations of such Collateral as Lender may require to identify the nature, extent, and location of such Collateral. Such information shall be submitted for Grantor and each of its subsidiaries or related companies.

**Maintenance and Inspection of Collateral.** Grantor shall maintain all tangible Collateral in good condition and repair. Grantor will not commit or permit damage to or destruction of the Collateral or any part of the Collateral. Lender and its designated representatives and agents shall have the right at all reasonable times to examine, inspect, and audit the Collateral wherever located. Grantor shall immediately notify Lender of all cases involving the return, rejection, repossession, loss or damage of or to any Collateral; of any request for credit or adjustment or of any other dispute arising with respect to the Collateral; and generally of all happenings and events affecting the Collateral or the value or the amount of the Collateral.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Compliance With Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any hazardous waste or substance, as those terms are defined in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or Federal laws, rules, or regulations adopted pursuant to any of the foregoing. The terms "hazardous waste" and "hazardous substance" shall also include, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for hazardous wastes and substances. Grantor hereby (a) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws, and (b) agrees to indemnify and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if it so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non–interest–bearing account which Grantor may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (a) the name of the insurer; (b) the risks insured; (c) the amount of the policy; (d) the property insured; (e) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (f) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**GRANTOR'S RIGHT TO POSSESSION.** Until default, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**EXPENDITURES BY LENDER.** If not discharged or paid when due, Lender may (but shall not be obligated to) discharge or pay any amounts required to be discharged or paid by Grantor under this Agreement, including without limitation all taxes, liens, security interests, encumbrances, and other claims, at any time levied or placed on the Collateral. Lender also may (but shall not be obligated to) pay all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses shall become a part of the Indebtedness and,

at Lender's option, will  (a) be payable on demand,  (b) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either  (i) the term of any applicable insurance policy or  (ii) the remaining term of the Note, or  (c) be treated as a balloon payment which will be due and payable at the Note's maturity.  This Agreement also will secure payment of these amounts.  Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of an Event of Default.

**REINSTATEMENT OF SECURITY INTEREST.**  If payment is made by Grantor, whether voluntarily or otherwise, or by guarantor or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment (a) to Grantor's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, (b) by reason of any judgment, decree or order of any court or administrative body having jurisdiction over Lender or any of Lender's property, or (c) by reason of any settlement or compromise of any claim made by Lender with any claimant (including without limitation Grantor), the Indebtedness shall be considered unpaid for the purpose of enforcement of this Agreement and this Agreement shall continue to be effective or shall be reinstated, as the case may be, notwithstanding any cancellation of this Agreement or of any note or other instrument or agreement evidencing the Indebtedness and the Collateral will continue to secure the amount repaid or recovered to the same extent as if that amount never had been originally received by Lender, and Grantor shall be bound by any judgment, decree, order, settlement or compromise relating to the Indebtedness or to this Agreement.

**EVENTS OF DEFAULT.**  Each of the following shall constitute an Event of Default under this Agreement:

**Default on Indebtedness.**  Failure of Grantor to make any payment when due on the Indebtedness.

**Other Defaults.**  Failure of Grantor to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or in any other agreement between Lender and Grantor.

**False Statements.**  Any warranty, representation or statement made or furnished to Lender by or on behalf of Grantor under this Agreement, the Note or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Defective Collateralization.**  This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral documents to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.**  The dissolution (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.**  Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against the Collateral or any other collateral securing the Indebtedness.  This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender.  However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.**  Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or such Guarantor dies or becomes incompetent.  Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure the Event of Default.

**Adverse Change.**  A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.**  Lender, in good faith, deems itself insecure.

**Right to Cure.**  If any default, other than a Default on Indebtedness, is curable and if Grantor has not been given a prior notice of a breach of the same provision of this Agreement, it may be cured (and no Event of Default will have occurred) if Grantor, after Lender sends written notice demanding cure of such default,  (a) cures the default within fifteen (15) days; or  (b), if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.**  If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Illinois Uniform Commercial Code.  In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.**  Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice.

**Assemble Collateral.**  Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral.  Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender.  Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral.  If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.**  Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in its own name or that of Grantor.  Lender may sell the Collateral at public auction or private sale.  Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor reasonable notice of the time after which any private sale or any other intended disposition of the Collateral is to be made.  The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition.  All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.**  To the extent permitted by applicable law, Lender shall have the following rights and remedies regarding the appointment of a receiver:  (a) Lender may have a receiver appointed as a matter of right,  (b) the receiver may be an employee of Lender and may serve without bond, and  (c) all fees of the receiver and his or her attorney shall become part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Collect Revenues, Apply Accounts.**  Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral.  Lender may at any time in its discretion transfer any Collateral into its own name or that of its nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine.  Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due.  For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral.  To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.**  If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement.  Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.**  Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time.  In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Cumulative Remedies.**  All of Lender's rights and remedies, whether evidenced by this Agreement or the Related Documents or by any other writing, shall be cumulative and may be exercised singularly or concurrently.  Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and to exercise its remedies.

**MISCELLANEOUS PROVISIONS.**  The following miscellaneous provisions are a part of this Agreement:

**Amendments.**  This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement.  No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Applicable Law.**  This Agreement has been delivered to Lender and accepted by Lender in the State of Illinois.  If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of  the State of Illinois.  This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

07-21-1999
COMMERCIAL SECURITY AGREEMENT
Page 4
(Continued)

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (and including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Multiple Parties.** All obligations of Grantor under this Agreement shall be joint and several, and all references to Grantor shall mean each and every Grantor. This means that each of the persons signing below is responsible for all obligations in this Agreement.

**Notices.** All notices required to be given under this Agreement shall be given in writing, may be sent by telefacsimile (unless otherwise required by law), and shall be effective when actually delivered or when deposited with a nationally recognized overnight courier or deposited in the United States mail, first class, postage prepaid, addressed to the party to whom the notice is to be given at the address shown above. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. To the extent permitted by applicable law, if there is more than one Grantor, notice to any Grantor shall constitute notice to all Grantors. For notice purposes, Grantor will keep Lender informed at all times of Grantor's current address(es).

**Power of Attorney.** Grantor hereby appoints Lender as its true and lawful attorney-in-fact, irrevocably, with full power of substitution to do the following: (a) to demand, collect, receive, receipt for, sue and recover all sums of money or other property which may now or hereafter become due, owing or payable from the Collateral; (b) to execute, sign and endorse any and all claims, instruments, receipts, checks, drafts or warrants issued in payment for the Collateral; (c) to settle or compromise any and all claims arising under the Collateral, and, in the place and stead of Grantor, to execute and deliver its release and settlement for the claim; and (d) to file any claim or claims or to take any action or institute or take part in any proceedings, either in its own name or in the name of Grantor, or otherwise, which in the discretion of Lender may seem to be necessary or advisable. This power is given as security for the Indebtedness, and the authority hereby conferred is and shall be irrevocable and shall remain in full force and effect until renounced by Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Agreement in all other respects shall remain valid and enforceable.

**Successor Interests.** Subject to the limitations set forth above on transfer of the Collateral, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waiver.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT, AND GRANTOR AGREES TO ITS TERMS. THIS AGREEMENT IS DATED JULY 21, 1999.

GRANTOR:

QUALITY FOODS, L.L.C. D/B/A POPEYES RESTAURANT

By: _____
BENJAMIN LASTER, Member

LENDER:

PINNACLE BANK

By: _____
Authorized Officer

LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.26b (c) 1999 CFI ProServices, Inc. All rights reserved. [IL-E40 991816.LN C23.OVL]

This STATEMENT is presented to a filing officer for filing pursuant to the Uniform Commercial Code.

| | | For Filing Officer<br>(Date, Time, Number, and Filing Office) |
|---|---|---|
| Debtor(s) (Last Name First) and Address(es)<br><br>QUALITY FOODS I, L.L.C. D/B/A POPEYES<br>RESTAURANT 36—4251422<br>POPEYES RESTAURANT 36—4251422<br>2562 WESTERN AVENUE<br>PARK FOREST, IL 60466 | Secured Party(ies) and Address(es)<br><br>PINNACLE BANK<br>6000 W. Cermak Rd.<br><br>Cicero, IL 60804 | UCU112/29/99:01:2932:<br>20.00 MU<br>SOSIL 07:27 4136900 FS |

1. This Financing statement covers the following types (or items) of property:

THE FOLLOWING PROPERTY OF THE DEBTOR WHETHER NOW OR HEREAFTER
EXISTING OR ACQUIRED AND WHETHER NOW OR HEREAFTER LOCATED: ALL
ACCOUNTS, NOTES, CONTRACT RIGHTS, CHATTEL PAPER, INSTRUMENTS,
DOCUMENTS, CONDITIONAL SALES CONTRACTS, GOODS, INVENTORY, EQUIPMENT,
MACHINERY, FURNITURE, FIXTURES, VEHICLES, GENERAL INTANGIBLES, INSURANCE
POLICIES, ACCEPTANCES, AND ALL PROCEEDS OF ANY OF THE FOREGOING; whether
any of the foregoing is owned now or acquired later;  all accessions, additions,
replacements, and substitutions relating to any of the foregoing; all records of any kind
relating to any of the foregoing; all proceeds relating to any of the foregoing (including
insurance, general intangibles and accounts proceeds).

ASSIGNEE OF SECURED PARTY

2. [X]  Products of Collateral are also covered.

TERMINATION STATEMENT: This Statement of Termination of Financing is presented to a Filing Officer for filing pursuant to the Uniform Commercial Code.  The Secured Party
certifies that the Secured Party no longer claims a security interest under the financing statement bearing the file number shown above.

Date_____ 19_____

By: _____
(Signature of Secured Party of Assignee of Record. Not Valid Until Signed.)

(3) FILING OFFICER COPY — ACKNOWLEDGMENT

**GROUP EXHIBIT G**

RECEIVED
SECRETARY OF STATE
UNIFORM COMM. CODE DIV.

2004 AUG 31 PM 4: 30

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
DILIGENZ, INC.    1-800-858-5294

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

```
9727295
DILIGENZ, INC.
6500 HARBOUR HEIGHTS PKWY, SUITE 400
MUKILTEO, WA 98275
```

UCU109/01/04:04:5472:
20.00 CK01
SOSIL 11:05    8722332 CT

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE #**
004136900   12/29/1999

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**3.** ☒ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**4.** ☐ **ASSIGNMENT (full or partial):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

**5.** ☐ **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.
☐ DELETE name: Give record name to be deleted in item 6a or 6b.
☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

**6. CURRENT RECORD INFORMATION:**

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| QUALITY FOODS I, LLC | | | |
| OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

**7. CHANGED (NEW) OR ADDED INFORMATION:**

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 7d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any | ☐ NONE |
|---|---|---|---|---|---|

**8. AMENDMENT (COLLATERAL CHANGE): check only one box.**

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| FIFTH THIRD BANK | | | |
| OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA**
23-2512  0900772906   QUALITY FOODS I, LLC                                    9727295

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 07/29/98)

COPY

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Angie Summey        800-247-4274 ext. 2883

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

FirstCity Servicing Corp.
ATTN:  Angie Summey
PO Box 8216
Waco, TX 76714-8216

SECRETARY OF STATE
UNIFORM COMM. CODE DIV.

2006 JUL 28 PM 4: 30

UCU107/28/06:06:5253:
20.00 CK01
SOSIL 14:12  8827120 AS

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE #   004136900   12/29/99 | 1b. [ ] This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |

2. [ ] **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. [ ] **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. [X] **ASSIGNMENT** (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects [ ] Debtor or [ ] Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

[ ] CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.   [ ] DELETE name: Give record name to be deleted in item 6a or 6b.   [ ] ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. **CURRENT RECORD INFORMATION:**

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR | | | |
| 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. **CHANGED (NEW) OR ADDED INFORMATION:**

| 7a. ORGANIZATION'S NAME  FH Partners, L.P. | | | |
|---|---|---|---|
| OR | | | |
| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS  P.O. Box 8216 | CITY  Waco | STATE  TX | POSTAL CODE  76714-8216 | COUNTRY |

| 7d. TAX ID #:  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any | [ ] NONE |

8. **AMENDMENT (COLLATERAL CHANGE):** check only one box.

Describe collateral [ ] deleted or [ ] added, or give entire [ ] restated collateral description, or describe collateral [ ] assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here [ ] and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME  Fifth Third Bank | | | |
|---|---|---|---|
| OR | | | |
| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA
Quality Foods L.L.C.                    330480151        IL SOS

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 07/29/98)

# COMMERCIAL SECURITY AGREEMENT

| Principal $600,000.00 | Loan Date 07-21-1999 | Maturity 08-01-2004 | Loan No | Call | Collateral | Account | Officer 2102 | Initials |
|---|---|---|---|---|---|---|---|---|

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

**Borrower:** QUALITY FOODS II, L.L.C. D/B/A POPEYES  RESTAURANT (TIN: 36-4281424)  5441 S WENTWORTH  CHICAGO, IL 60609

**Lender:** PINNACLE BANK  6000 W. Cermak Rd.  Cicero, IL 60804

---

THIS COMMERCIAL SECURITY AGREEMENT is entered into between QUALITY FOODS II, L.L.C. D/B/A POPEYES RESTAURANT (referred to below as "Grantor"); and PINNACLE BANK (referred to below as "Lender). For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**DEFINITIONS.** The following words shall have the following meanings when used in this Agreement. Terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. All references to dollar amounts shall mean amounts in lawful money of the United States of America.

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Collateral.** The word "Collateral" means the following described property of Grantor, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

THE FOLLOWING PROPERTY OF THE DEBTOR WHETHER NOW OR HEREAFTER EXISTING OR ACQUIRED AND WHETHER NOW OR HEREAFTER LOCATED: ALL ACCOUNTS, NOTES, CONTRACT RIGHTS, CHATTEL PAPER, INSTRUMENTS, DOCUMENTS, CONDITIONAL SALES CONTRACTS, GOODS, INVENTORY, MACHINERY, FURNITURE, FIXTURES, VEHICLES, GENERAL INTANGIBLES, INSURANCE POLICIES, ACCEPTANCES, AND ALL PROCEEDS OF ANY OF THE FOREGOING

In addition, the word "Collateral" includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(a) All attachments, accessions, accessories, tools, parts, supplies, increases, and additions to and all replacements of and substitutions for any property described above.

(b) All products and produce of any of the property described in this Collateral section.

(c) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, or other disposition of any of the property described in this Collateral section.

(d) All proceeds (including Insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section.

(e) All records and data relating to any of the property described In this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**Event of Default.** The words "Event of Default" mean and include without limitation any of the Events of Default set forth below in the section titled "Events of Default."

**Grantor.** The word "Grantor" means QUALITY FOODS II, L.L.C. D/B/A POPEYES RESTAURANT, its successors and assigns.

**Guarantor.** The word "Guarantor" means and includes without limitation each and all of the guarantors, sureties, and accommodation parties in connection with the Indebtedness.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note, including all principal and interest, together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents. In addition, the word "Indebtedness" includes all other obligations, debts and liabilities, plus interest thereon, of Grantor, or any one or more of them, to Lender, as well as all claims by Lender against Grantor, or any one or more of them, whether existing now or later; whether they are voluntary or involuntary, due or not due, direct or indirect, absolute or contingent, liquidated or unliquidated; whether Grantor may be liable individually or jointly with others; whether Grantor may be obligated as guarantor, surety, accommodation party or otherwise; whether recovery upon such indebtedness may be or hereafter may become barred by any statute of limitations; and whether such indebtedness may be or hereafter may become otherwise unenforceable.

**Lender.** The word "Lender" means PINNACLE BANK, its successors and assigns.

**Note.** The word "Note" means the note or credit agreement dated July 21, 1999, in the principal amount of $600,000.00 from QUALITY FOODS II, L.L.C. D/B/A POPEYES RESTAURANT to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for the note or credit agreement.

**Related Documents.** The words "Related Documents" mean and include without limitation all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**RIGHT OF SETOFF.** Grantor hereby grants Lender a contractual security interest in and hereby assigns, conveys, delivers, pledges, and transfers all of Grantor's right, title and interest in and to Grantor's accounts with Lender (whether checking, savings, or some other account), including all accounts held jointly with someone else and all accounts Grantor may open in the future, excluding, however, all IRA and Keogh accounts, and all trust accounts for which the grant of a security interest would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all Indebtedness against any and all such accounts.

**OBLIGATIONS OF GRANTOR.** Grantor warrants and covenants to Lender as follows:

**Organization.** Grantor is a limited liability company which is duly organized, validly existing, and in good standing under the laws of the State of Illinois.

**Authorization.** The execution, delivery, and performance of this Agreement by Grantor have been duly authorized by all necessary action by Grantor and do not conflict with, result in a violation of, or constitute a default under (a) any provision of the membership agreement, or any agreement or other instrument binding upon Grantor or (b) any law, governmental regulation, court decree, or order applicable to Grantor.

**Perfection of Security Interest.** Grantor agrees to execute such financing statements and to take whatever other actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper if not delivered to Lender for possession by Lender. Grantor hereby appoints Lender as its irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect or to continue the security interest granted in this Agreement. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral. Grantor promptly will notify Lender before any change in Grantor's name including any change to the assumed business names of Grantor. **This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Grantor may not be indebted to Lender.**

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its membership agreement does not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, the Collateral is enforceable in accordance with its terms, is genuine, and complies with applicable laws concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral.

**Location of the Collateral.** Grantor, upon request of Lender, will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (a) all real property owned or being purchased by Grantor; (b) all real property being rented or leased by Grantor; (c) all storage facilities owned, rented, leased, or being used by Grantor; and (d) all other properties where Collateral is or may be located. Except in the ordinary course of its business, Grantor shall not remove the Collateral from its existing locations without the prior written consent of Lender.

EXHIBIT H

**Removal of Collateral.** Grantor shall keep the Collateral (or to the extent the Collateral consists of intangible property such as accounts, the records concerning the Collateral) at Grantor's address shown above, or at such other locations as are acceptable to Lender. Except in the ordinary course of its business, including the sales of inventory, Grantor shall not remove the Collateral from its existing locations without the prior written consent of Lender. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of Illinois, without the prior written consent of Lender.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. While Grantor is not in default under this Agreement, Grantor may sell inventory, but only in the ordinary course of its business and only to buyers who qualify as a buyer in the ordinary course of business. A sale in the ordinary course of Grantor's business does not include a transfer in partial or total satisfaction of a debt or any bulk sale. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that it holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Collateral Schedules and Locations.** Insofar as the Collateral consists of inventory, Grantor shall deliver to Lender, as often as Lender shall require, such lists, descriptions, and designations of such Collateral as Lender may require to identify the nature, extent, and location of such Collateral. Such information shall be submitted for Grantor and each of its subsidiaries or related companies.

**Maintenance and Inspection of Collateral.** Grantor shall maintain all tangible Collateral in good condition and repair. Grantor will not commit or permit damage to or destruction of the Collateral or any part of the Collateral. Lender and its designated representatives and agents shall have the right at all reasonable times to examine, inspect, and audit the Collateral wherever located. Grantor shall immediately notify Lender of all cases involving the return, rejection, repossession, loss or damage of or to any Collateral; of any request for credit or adjustment or of any other dispute arising with respect to the Collateral; and generally of all happenings and events affecting the Collateral or the value or the amount of the Collateral.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Compliance With Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any hazardous waste or substance, as those terms are defined in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99–499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or Federal laws, rules, or regulations adopted pursuant to any of the foregoing. The terms "hazardous waste" and "hazardous substance" shall also include, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for hazardous wastes and substances. Grantor hereby (a) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws, and (b) agrees to indemnify and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if it so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non–interest–bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (a) the name of the insurer; (b) the risks insured; (c) the amount of the policy; (d) the property insured; (e) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (f) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**GRANTOR'S RIGHT TO POSSESSION.** Until default, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**EXPENDITURES BY LENDER.** If not discharged or paid when due, Lender may (but shall not be obligated to) discharge or pay any amounts required to be discharged or paid by Grantor under this Agreement, including without limitation all taxes, liens, security interests, encumbrances, and other claims, at any time levied or placed on the Collateral. Lender also may (but shall not be obligated to) pay all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses shall become a part of the Indebtedness and,

by law), and shall be effective when actually delivered or when deposited with a nationally recognized overnight courier or deposited in the United States mail, first class, postage prepaid, addressed to the party to whom the notice is to be given at the address shown above. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. To the extent permitted by applicable law, if there is more than one Grantor, notice to any Grantor will constitute notice to all Grantors. For notice purposes, Grantor will keep Lender informed at all times of Grantor's current address(es).

**Power of Attorney.** Grantor hereby appoints Lender as its true and lawful attorney-in-fact, irrevocably, with full power of substitution to do the following: (a) to demand, collect, receive, receipt for, sue and recover all sums of money or other property which may now or hereafter become due, owing or payable from the Collateral; (b) to execute, sign and endorse any and all claims, instruments, receipts, checks, drafts or warrants issued in payment for the Collateral; (c) to settle or compromise any and all claims arising under the Collateral, and, in the place and stead of Grantor, to execute and deliver its release and settlement for the claim; and (d) to file any claim or claims or to take any action or institute or take part in any proceedings, either in its own name or in the name of Grantor, or otherwise, which in the discretion of Lender may seem to be necessary or advisable. This power is given as security for the Indebtedness, and the authority hereby conferred is and shall be irrevocable and shall remain in full force and effect until renounced by Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Agreement in all other respects shall remain valid and enforceable.

**Successor Interests.** Subject to the limitations set forth above on transfer of the Collateral, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waiver.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT, AND GRANTOR AGREES TO ITS TERMS. THIS AGREEMENT IS DATED JULY 21, 1999.

GRANTOR:

QUALITY FOODS II, L.L.C. D/B/A POPEYES RESTAURANT

By: _____

    **BENJAMIN LASTER, Member**

LENDER:

PINNACLE BANK

By: _____

    **Authorized Officer**

LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.26b (c) 1999 CFI ProServices, Inc.  All rights reserved. [IL-E40 991817.LN C23.OVL]

UCU0589712

RECEIVED
SECRETARY OF STATE
UNIFORM COMM. CODE DIV.
2004 JUL 26 PM 4:30

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
DILIGENZ, INC.    1-800-858-5294

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

```
9246198
DILIGENZ, INC.
6500 HARBOUR HEIGHTS PKWY, SUITE 400
MUKILTEO, WA 98275
```

UCU107/27/04:08:0083:
20.00 CK01
SOS1L 14:10  8717667 CT

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE #**
004108552  10/14/1999

1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**3.** ☒ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**4.** ☐ **ASSIGNMENT (full or partial):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

**5. AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.
☐ CHANGE name and/or address. Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.
☐ DELETE name: Give record name to be deleted in item 6a or 6b.
☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

**6. CURRENT RECORD INFORMATION:**

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| QUALITY FOODS II, LLC | | | |
| OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

**7. CHANGED (NEW) OR ADDED INFORMATION:**

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 7d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any | ☐ NONE |
|---|---|---|---|---|---|

**8. AMENDMENT (COLLATERAL CHANGE):** check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| FIFTH THIRD BANK | | | |
| OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

**10. OPTIONAL FILER REFERENCE DATA**
23-2311  0900772898  QUALITY FOODS II, LLC                    9246198

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 07/29/98)

**GROUP EXHIBIT I**

## EXHIBIT TO UCC–1 FINANCING STATEMENT

July 21, 1999

**DEBTORS**

QUALITY FOODS II, L.L.C. D/B/A POPEYES RESTAURANT    SSN / Tax ID # 36–4261424
POPEYES RESTAURANT    SSN / Tax ID # 36–4261424

**MAILING ADDRESS:**

8441 S WENTWORTH, CHICAGO, IL 60609

**ADDITIONAL FILING NAMES:**

POPEYES RESTAURANT
POPEYES RESTAURANT

**COLLATERAL DESCRIPTION:**

THE FOLLOWING PROPERTY OF THE DEBTOR WHETHER NOW OR HEREAFTER EXISTING OR ACQUIRED AND WHETHER NOW OR HEREAFTER LOCATED: ALL ACCOUNTS, NOTES, CONTRACT RIGHTS, CHATTEL PAPER, INSTRUMENTS, DOCUMENTS, CONDITIONAL SALES CONTRACTS, GOODS, INVENTORY, MACHINERY, FURNITURE, FIXTURES, VEHICLES, GENERAL INTANGIBLES, INSURANCE POLICIES, ACCEPTANCES, AND ALL PROCEEDS OF ANY OF THE FOREGOING, whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and accounts proceeds).

This Exhibit is executed on the same date as the UCC–1 Financing Statement by PINNACLE BANK and the undersigned.

BENJAMIN LASTER                                      PINNACLE BANK

_____          By: _____
Signature(s) of Debtor(s)                   Signature(s) of Secured Party (ies)



UCU0603653

**FILE 2ND**
RECEIVED
SECRETARY OF STATE
UNIFORM COMM. CODE DIV.

## UCC FINANCING STATEMENT AMENDMENT '04 JUL 26  PH 4:30

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

UCU107/27/04:08:0082:
20.00 CK01
SOSIL 14:10   8717666 AM

A. NAME & PHONE OF CONTACT AT FILER [optional]
DILIGENZ, INC.   1-800-858-5294

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

    9246058
    DILIGENZ, INC.
    6500 HARBOUR HEIGHTS PKWY, SUITE 400
    MUKILTEO, WA 98275

9

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE#
004108552  10/14/1999

1b. This FINANCING STATEMENT AMENDMENT is
to be filed [for record] (or recorded) in the
REAL ESTATE RECORDS.

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☒ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.
☒ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.
☐ DELETE name: Give record name to be deleted in item 6a or 6b.
☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| QUALITY FOODS II, L.L.C. D/B/A POPEYES RESTAURANT | | | |
| OR 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| QUALITY FOODS II, LLC | | | |
| OR 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5441 S. WENTWORTH | CHICAGO | IL | 60609 | USA |

| 7d. TAX ID #  SSN OR EIN | ADDL INFO RE | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | ORGANIZATION DEBTOR | LLC | IL | 00255378 | ☐ NONE |

8. AMENDMENT (COLLATERAL CHANGE): check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| FIFTH THIRD BANK | | | |
| OR 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA
23-2311  0900772898  QUALITY FOODS II, LLC                    9246058

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT [FORM UCC3] (REV. 07/29/98)

UC0599716

RECEIVED
SECRETARY OF STATE
UNIFORM COMMERCIAL CODE DIVISION

2004 JUL 26  PH 4: 30

UCU107/27/04:03:0081:
20.00 CKO1
SOSIL 14:10  B717665 AM

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
DILIGENZ, INC.   1-800-858-5294

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

┌ 9246009
  DILIGENZ, INC.
  6500 HARBOUR HEIGHTS PKWY, SUITE 400
  MUKILTEO, WA 98275
└

10

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT #** 004108552  10/14/1999

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ **ASSIGNMENT (full or partial):** Give name of assignee in item 7a or 7c and address of assignee in item 7c; and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☑ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.
☑ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.
☐ DELETE name: Give record name to be deleted in item 6a or 6b.
☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. **CURRENT RECORD INFORMATION:**

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| PINNACLE BANK | | | |
| OR  6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. **CHANGED (NEW) OR ADDED INFORMATION:**

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| FIFTH THIRD BANK | | | |
| OR  7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1701 W. GOLF ROAD | ROLLING MEADOWS | IL | 60008 | USA |

| 7d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

8. **AMENDMENT (COLLATERAL CHANGE): check only one box.**
Describe collateral ☐ deleted  or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. **NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| PINNACLE BANK | | | |
| OR  9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA
23-2311  0900772898  QUALITY FOODS II, LLC                9246009

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 07/29/98)

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Angie Summey          800-247-4274 ext. 2883

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

FirstCity Servicing Corp.
ATTN:  Angie Summey
PO Box 8216
Waco, TX 76714-8216

SECRETARY OF ILL
UNIFORM COMM. CODE DIV.
2006 JUL 28 PM 4:30

UCU107/28/06:06:5254:
20.00 CK01 8827121 AS
SOSIL 14:13

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

1a. INITIAL FINANCING STATEMENT FILE #
004108552    10/14/99

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☒ **ASSIGNMENT** (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.   ☐ DELETE name: Give record name to be deleted in item 6a or 6b.   ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | | |

7. CHANGED (NEW) OR ADDED INFORMATION:

| | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | FH Partners, L.P. | | | |
| OR | 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | | |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O. Box 8216 | Waco | TX | 76714-8216 | |

| 7d. TAX ID #:  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

8. **AMENDMENT (COLLATERAL CHANGE):** check only one box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| | 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| | Fifth Third Bank | | | |
| OR | 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | | | | |

10. OPTIONAL FILER REFERENCE DATA
Quality Foods II, LLC                330480150        IL SOS

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 07/29/98)

This STATEMENT is presented to a filing officer for filing pursuant to the Uniform Commercial Code.

| Debtor(s) (Last Name First) and Address(es) | Secured Party(ies) and Address(es) |
|---|---|
| QUALITY FOODS II, L.L.C. D/B/A POPEYES RESTAURANT 36–4281424 See Attached Exhibit dated July 21, 1999. 5441 S WENTWORTH CHICAGO, IL 60609 | PINNACLE BANK 6000 W. Cermak Rd. Cicero, IL 60804 |

*For Filing Officer*
*(Date, Time, Number, and Filing Office)*

*Cook Co, IL*

99972222

ASSIGNEE OF SECURED PARTY
8376/0065 98 001 Page 1 of 3
1999-10-15 12:09:57
Cook County Recorder        25.50

1. This Financing statement covers the following types (or items) of property:

THE FOLLOWING PROPERTY OF THE DEBTOR WHETHER NOW OR HEREAFTER EXISTING OR ACQUIRED AND WHETHER NOW OR HEREAFTER LOCATED: ALL ACCOUNTS, NOTES, CONTRACT RIGHTS, CHATTEL PAPER, INSTRUMENTS, DOCUMENTS, CONDITIONAL SALES CONTRACTS, GOODS, INVENTORY, MACHINERY, FURNITURE, FIXTURES, VEHICLES, GENERAL INTANGIBLES, INSURANCE POLICIES, ACCEPTANCES, AND ALL PROCEEDS OF ANY OF THE FOREGOING; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and accounts proceeds).

This Financing Statement is to be recorded in the real estate records.

All of the foregoing collateral is located on the real property (the "Property") legally described in **Exhibit A** attached hereto and made a part hereof. Debtor leases the Property. The owner of the Property is Devon Bank, as Trustee u/t/a dated 5/1/87 and known as Trust No. 5349.

2. ☒ Products of Collateral are also covered.

| | |
|---|---|
| 2  Additional sheets presented. | |
| X  Filed with ~~Secretary of State of Illinois~~ *Cook Co, IL* | BENJAMIN LASTER  Charlie Watts |
| ___ Debtor is a transmitting utility as defined in UCC 9–105. | By: _Charlie Watts_ |
| | Signature of (Debtor)        (Secured Party)* |
| | *Signature of Debtor Required in Most Cases: Signature of Secured Party in Cases Covered by UCC 9–402 (2) |

(1) FILING OFFICER COPY – ALPHABETICAL

GROUP EXHIBIT J

# EXHIBIT TO UCC-1 FINANCING STATEMENT

**July 21, 1999**

**DEBTORS**

QUALITY FOODS II, L.L.C. D/B/A POPEYES RESTAURANT    SSN / Tax ID # 36-4281424
POPEYES RESTAURANT    SSN / Tax ID # 36-4281424

**MAILING ADDRESS:**

5441 S WENTWORTH, CHICAGO, IL  60609

**ADDITIONAL FILING NAMES:**

POPEYES RESTAURANT
POPEYES RESTAURANT

**COLLATERAL DESCRIPTION:**

THE FOLLOWING PROPERTY OF THE DEBTOR WHETHER NOW OR HEREAFTER EXISTING OR ACQUIRED AND WHETHER NOW OR HEREAFTER LOCATED: ALL ACCOUNTS, NOTES, CONTRACT RIGHTS, CHATTEL PAPER, INSTRUMENTS, DOCUMENTS, CONDITIONAL SALES CONTRACTS, GOODS, INVENTORY, MACHINERY, FURNITURE, FIXTURES, VEHICLES, GENERAL INTANGIBLES, INSURANCE POLICIES, ACCEPTANCES, AND ALL PROCEEDS OF ANY OF THE FOREGOING; whether any of the foregoing is owned now or acquired later;  all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and accounts proceeds).

This Financing Statement is to be recorded in the real estate records.

Return To:  *1540506-2*
Lexis Document Services
135 South LaSalle Street
Suite 2260
Chicago, IL  60603

This Exhibit is executed on the same date as the UCC-1 Financing Statement by PINNACLE BANK and the undersigned.

~~BENJAMIN LASTER~~  Charlie Watts                    **PINNACLE BANK**

_Charlie Watts_                                        By: _____

Signature(s) of Debtor(s)                              Signature(s) of Secured Party (ies)

EXHIBIT A

OUTLOT 2

THAT PART OF BLOCKS 3, 4, 5, 6, 7 AND 8 IN PETER SHIMP'S SUBDIVISION OF THAT PART OF THE SOUTHEAST 1/4 OF THE SOUTHEAST 1/4 OF SECTION 9, TOWNSHIP 38 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN LYING WEST OF THE ROCK ISLAND RAILROAD TOGETHER WITH THE VACATED ALLEYS AND VACATED STREETS AND STREETS TO BE VACATED (EXCEPTING THE WEST 7 FEET OF SAID BLOCKS 3, 6 AND 7 FOR WIDENING SOUTH WENTWORTH AVENUE) IN COOK COUNTY, ILLINOIS TAKEN AS A TRACT, DESCRIBED AS FOLLOWS

NOTE: THE WEST LINE OF SAID TRACT IS "DUE NORTH-SOUTH" FOR THE FOLLOWING COURSES

BEGINNING AT A POINT IN THE WEST LINE OF SAID TRACT THAT IS 203 FEET NORTH OF THE SOUTHWEST CORNER OF SAID TRACT; THENCE DUE NORTH ON SAID WEST LINE, 100 FEET; THENCE NORTH 89 DEGREES 45 MINUTES EAST PARALLEL WITH THE SOUTH LINE OF SAID TRACT, 110.27 FEET TO A POINT IN A CURVED LINE CONVEX TO THE WEST, AND HAVING A RADIUS OF 300 FEET AND BEING TANGENT WITH A LINE THAT IS 90 FEET EAST OF SAID WEST LINE; THENCE SOUTHEASTERLY ON SAID CURVE, AN ARC LENGTH OF 95.09 FEET TO A POINT IN A LINE THAT IS 158 FEET EAST OF SAID WEST LINE; THENCE DUE SOUTH ON SAID LINE, 18 FEET TO A POINT IN A LINE THAT IS 203 FEET NORTH OF SAID SOUTH LINE OF SAID TRACT; THENCE SOUTH 89 DEGREES 45 MINUTES WEST ON SAID LINE, 158 FEET TO THE POINT OF BEGINNING.

PIN: 20-09-420-038
PROPERTY ADDRESS: 5441 SOUTH WENTWORTH AVE.  CHICAGO, IL 60609

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

Doc#:  0626217048  Fee: $28.50
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 09/19/2006 10:28 AM  Pg:  1 of 3

A. NAME & PHONE OF CONTACT AT FILER [optional]
Angie Summey         800-247-4274 ext. 2883

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

FirstCity Servicing Corp.
ATTN:  Angie Summey
PO Box 8216
Waco, TX 76714-8216

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # | 1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. [X] |
|---|---|
| 99972222    10/15/99 | |

2. [ ] **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. [ ] **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. [ ] **ASSIGNMENT** (full or partial):  Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):** This Amendment affects [ ] Debtor  or [ ] Secured Party of record.  Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

[X] CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.  |  [ ] DELETE name: Give record name to be deleted in item 6a or 6b.  |  [ ] ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | Quality Foods II, L.L.C. D/B/A Popeyes Restaurant | | | |
| | 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7. CHANGED (NEW) OR ADDED INFORMATION:

| | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | Quality Foods II, LLC | | | |
| | 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5441 S. Wentworth | Chicago | IL | 60609 | USA |

| 7d. TAX ID #:  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION LLC | 7f. JURISDICTION OF ORGANIZATION IL | 7g. ORGANIZATIONAL ID #, if any 00255378 | [ ] NONE |
|---|---|---|---|---|---|

8. **AMENDMENT (COLLATERAL CHANGE):** check only one box.
Describe collateral [ ] deleted or [ ] added, or give entire [ ] restated collateral description, or describe collateral [ ] assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment).  If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor,  or if this is a Termination authorized by a Debtor, check here [ ] and enter name of DEBTOR authorizing this Amendment.

| | 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | FH Partners, L.P. | | | |
| | 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 10. OPTIONAL FILER REFERENCE DATA | | |
|---|---|---|
| Quality Foods II, LLC | 330480150 | Cook County, IL |

*SC*
*11 of*
*3 P of*
*7 th*

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 07/29/98)



EXHIBIT A

OUTLOT 2

THAT PART OF BLOCKS 3, 4, 5, 6, 7 AND 8 IN PETER SHIMP'S SUBDIVISION OF THAT PART OF THE SOUTHEAST 1/4 OF THE SOUTHEAST 1/4 OF SECTION 9, TOWNSHIP 38 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN LYING WEST OF THE ROCK ISLAND RAILROAD TOGETHER WITH THE VACATED ALLEYS AND VACATED STREETS AND STREETS TO BE VACATED (EXCEPTING THE WEST 7 FEET OF SAID BLOCKS 3, 6 AND 7 FOR WIDENING SOUTH WENTWORTH AVENUE) IN COOK COUNTY, ILLINOIS TAKEN AS A TRACT, DESCRIBED AS FOLLOWS

NOTE: THE WEST LINE OF SAID TRACT IS "DUE NORTH-SOUTH" FOR THE FOLLOWING COURSES

BEGINNING AT A POINT IN THE WEST LINE OF SAID TRACT THAT IS 203 FEET NORTH OF THE SOUTHWEST CORNER OF SAID TRACT; THENCE DUE NORTH ON SAID WEST LINE, 100 FEET; THENCE NORTH 89 DEGREES 45 MINUTES EAST PARALLEL WITH THE SOUTH LINE OF SAID TRACT, 110.27 FEET TO A POINT IN A CURVED LINE CONVEX TO THE WEST, AND HAVING A RADIUS OF 300 FEET AND BEING TANGENT WITH A LINE THAT IS 90 FEET EAST OF SAID WEST LINE; THENCE SOUTHEASTERLY ON SAID CURVE, AN ARC LENGTH OF 95.09 FEET TO A POINT IN A LINE THAT IS 158 FEET EAST OF SAID WEST LINE; THENCE DUE SOUTH ON SAID LINE, 18 FEET TO A POINT IN A LINE THAT IS 203 FEET NORTH OF SAID SOUTH LINE OF SAID TRACT; THENCE SOUTH 89 DEGREES 45 MINUTES WEST ON SAID LINE, 158 FEET TO THE POINT OF BEGINNING.

PIN: 20-09-420-038
PROPERTY ADDRESS: 5441 SOUTH WENTWORTH AVE.  CHICAGO, IL 60609







Doc#: 0626217047 Fee: $28.50
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 09/19/2006 10:28 AM Pg: 1 of 3

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Angie Summey          800-247-4274 ext. 2883

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

FirstCity Servicing Corp.
ATTN: Angie Summey
PO Box 8216
Waco, TX 76714-8216

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE #**
99972222   10/15/99

**1b.** This FINANCING STATEMENT AMENDMENT is [X] to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

**2.** [ ] **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**3.** [ ] **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**4.** [X] **ASSIGNMENT (full or partial):** Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

**5. AMENDMENT (PARTY INFORMATION):** This Amendment affects [ ] Debtor **or** [ ] Secured Party of record. Check only **one** of these two boxes.

Also check **one** of the following three boxes **and** provide appropriate information in items 6 and/or 7.

[ ] CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.    [ ] DELETE name: Give record name to be deleted in item 6a or 6b.    [ ] ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

**6. CURRENT RECORD INFORMATION:**

| | | | |
|---|---|---|---|
| **6a. ORGANIZATION'S NAME** | | | |

OR

| **6b. INDIVIDUAL'S LAST NAME** | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

**7. CHANGED (NEW) OR ADDED INFORMATION:**

| **7a. ORGANIZATION'S NAME** | | | |
|---|---|---|---|
| FH Partners, L.P. | | | |

OR

| **7b. INDIVIDUAL'S LAST NAME** | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| **7c. MAILING ADDRESS** | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O. Box 8216 | Waco | TX | 76714-8216 | |

| **7d. TAX ID #: SSN OR EIN** | ADD'L INFO RE ORGANIZATION DEBTOR | **7e. TYPE OF ORGANIZATION** | **7f. JURISDICTION OF ORGANIZATION** | **7g. ORGANIZATIONAL ID #, if any** |
|---|---|---|---|---|
| | | | | [ ] NONE |

**8. AMENDMENT (COLLATERAL CHANGE):** check only **one** box.

Describe collateral [ ] deleted or [ ] added, or give entire [ ] restated collateral description, or describe collateral [ ] assigned.

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here [ ] and enter name of DEBTOR authorizing this Amendment.

| **9a. ORGANIZATION'S NAME** | | | |
|---|---|---|---|
| Fifth Third Bank | | | |

OR

| **9b. INDIVIDUAL'S LAST NAME** | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

**10. OPTIONAL FILER REFERENCE DATA**
Quality Foods II, LLC          330480150          Cook County, IL

S C
M y
3 ? y
H V

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 07/29/98)

## UCC FINANCING STATEMENT AMENDMENT ADDENDUM
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

11. INITIAL FINANCING STATEMENT FILE # (same as item 1a on Amendment form)

99972222    10/15/99

12. NAME OF PARTY AUTHORIZING THIS AMENDMENT (same as item 9 on Amendment form)

| | 12a. ORGANIZATION'S NAME | | |
|---|---|---|---|
| OR | Fifth Third Bank | | |
| | 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME,SUFFIX |
| | | | |

13. Use this space for additional information

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

Debtor:
Quality Foods II, L.L.C. d/b/a Popeyes Restaurant
5441 S. Wentworth
Chicago, IL  60609

Secured Party:
Fifth Third Bank
1701 W. Golf Road
Rolling Meadows, IL  60008

Property Address:
5441 South Wentworth Ave.
Chicago, IL  60609

EXHIBIT A

OUTLOT 2

THAT PART OF BLOCKS 3, 4, 5, 6, 7 AND 8 IN PETER SHIMP'S SUBDIVISION OF THAT PART OF THE SOUTHEAST 1/4 OF THE SOUTHEAST 1/4 OF SECTION 9, TOWNSHIP 38 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN LYING WEST OF THE ROCK ISLAND RAILROAD TOGETHER WITH THE VACATED ALLEYS AND VACATED STREETS AND STREETS TO BE VACATED (EXCEPTING THE WEST 7 FEET OF SAID BLOCKS 3, 6 AND 7 FOR WIDENING SOUTH WENTWORTH AVENUE) IN COOK COUNTY, ILLINOIS TAKEN AS A TRACT, DESCRIBED AS FOLLOWS

NOTE: THE WEST LINE OF SAID TRACT IS "DUE NORTH-SOUTH" FOR THE FOLLOWING COURSES

BEGINNING AT A POINT IN THE WEST LINE OF SAID TRACT THAT IS 203 FEET NORTH OF THE SOUTHWEST CORNER OF SAID TRACT; THENCE DUE NORTH ON SAID WEST LINE, 100 FEET; THENCE NORTH 89 DEGREES 45 MINUTES EAST PARALLEL WITH THE SOUTH LINE OF SAID TRACT, 110.27 FEET TO A POINT IN A CURVED LINE CONVEX TO THE WEST, AND HAVING A RADIUS OF 300 FEET AND BEING TANGENT WITH A LINE THAT IS 90 FEET EAST OF SAID WEST LINE; THENCE SOUTHEASTERLY ON SAID CURVE, AN ARC LENGTH OF 95.09 FEET TO A POINT IN A LINE THAT IS 158 FEET EAST OF SAID WEST LINE; THENCE DUE SOUTH ON SAID LINE, 18 FEET TO A POINT IN A LINE THAT IS 203 FEET NORTH OF SAID SOUTH LINE OF SAID TRACT; THENCE SOUTH 89 DEGREES 45 MINUTES WEST ON SAID LINE, 158 FEET TO THE POINT OF BEGINNING.

PIN: 20-09-420-038
PROPERTY ADDRESS: 5441 SOUTH WENTWORTH AVE.   CHICAGO, IL 60609

Asset No.
Rec'd by CIA: By ........................ Date
Entered by ........................ Date
Entered-Loan Sys. By ........................ Date
Verified by QC: By ........................ Date

